**AIR TRANSPORT ASSOCIATION OF CANADA, Petitioner,**

v.

**FEDERAL AVIATION ADMINISTRATION, Respondent.**

Nos. 97–1360, 97–1356, 97–1357, 97–1358, 97–1359, 97–1362, 97–1363 and 97–1364.

United States Court of Appeals, District of Columbia Circuit.

Oct. 9, 1998.

---

Before: WALD, SENTELLE, and HENDERSON, Circuit Judges.

## ORDER

PER CURIAM:

This matter coming to be heard and being heard before the court upon the application of the Air Transport Association of Canada

for reimbursement of attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), and it appearing to the court for the reasons set forth more fully in the opinion filed contemporaneously herewith that the motion is well taken, it is hereby

**ORDERED, ADJUDGED,** and **DE-CREED** that the United States reimburse the Air Transport Association of Canada for attorneys' fees and expenses incurred during its preparation for *Asiana Airlines v. Federal Aviation Administration,* 134 F.3d 393 (D.C.Cir.1998), in the amount of $99,246.33 this 9th day of October, 1998.

Opinion for the court filed by Circuit Judge SENTELLE.

On Petitioner's Motion for Attorneys' Fees

SENTELLE, Circuit Judge:

On January 30, 1998, we issued an opinion allowing multiple consolidated petitions to vacate a fee schedule imposed by the Federal Aviation Administration ("FAA" or "the Administration") against foreign air carriers for services provided to airline overflights. The matter now returns to us on the application of Air Transport Association of Canada ("ATAC"), one of the original petitioners, for attorneys' fees. The FAA offers various objections both as to ATAC's entitlement and the amount of the fees sought. Finding the application to be meritorious, and the objections to be without merit, for the reasons more fully set out below, we allow the application.

### Background

In our original opinion in this matter, *Asiana Airlines v. Federal Aviation Administration,* 134 F.3d 393 (D.C.Cir.1998), we reviewed an FAA fee schedule established pursuant to 49 U.S.C. § 45301(a)(1) covering "[a]ir traffic control and related services provided to aircraft other than military and civilian aircraft of the United States government or of a foreign government that neither take off from, nor land in, the United States." Petitioners therein raised several procedural and substantive objections to the schedule. We rejected procedural challenges for reasons set forth in our earlier

opinion, but concluded that the substantive objections were meritorious. Therefore, we vacated the schedule in its entirety and remanded to the FAA for further proceedings. Petitioners' objection, with which we agreed, was straightforward. In the enabling statute, Congress had expressly directed the Administration to "ensure that each of the fees required ... is directly related to the Administration's costs of providing the service rendered," 49 U.S.C. § 45301(b)(1)(B). The FAA conceded the correctness of petitioners' rather unremarkable interpretation that the statute forbade the agency from basing fees on the value of services to the recipient rather than on cost to the provider. Because the Administration had determined its fee schedule based in essential part on the use of a system called "Ramsey pricing," which derived from nothing other than the value of services to the recipient, we had no difficulty in ruling that petitioners' substantive objection was well taken. 134 F.3d at 401–03. Because the rule before us and the supporting material "suggest[ed] no way to circumscribe a component of the fees based entirely on direct costs of services," we struck down the schedule in its entirety. *Id.* at 403. Successful petitioner ATAC now seeks recompense for a portion of its attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). Under that Act, we are required to "award to a prevailing party" of qualifying size against the United States fees and expenses inclusive of "reasonable attorney fees," subject to defenses and exceptions created by the Act. 28 U.S.C. § 2412(d)(1)(A) & (2)(A). While conceding that ATAC is a prevailing party for purposes of the Act, the FAA contests both its entitlement to fees and the amount of those fees on statutory grounds. Upon review of ATAC's claims and the FAA's defenses, we conclude that ATAC is correct as to its entitlement and the amount.

### A. *Entitlement*

The EAJA provides, in pertinent part, that "a court shall award to a prevailing party ... fees and other expenses ... incurred by that party in any civil action ... including proceedings for judicial review of an agency

action, brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). While the FAA concedes that ATAC is a prevailing party and meets other criteria for the award of fees, it contests ATAC's entitlement, arguing that the position of the United States (in this case, its agency FAA) was substantially justified and that special circumstances would make an award unjust. Both objections fail.

## 1. *Substantial Justification*

Where, as here, a movant under the EAJA has established that it is a prevailing party, "the burden is on the government to show that its litigation position was substantially justified on the law and the facts." *Cinciarelli v. Reagan,* 729 F.2d 801, 806 (D.C.Cir.1984). To establish substantial justification, the government need not establish that it was correct—indeed, since the movant is established as a prevailing party it could never do so—but only that its position is one that "a reasonable person could think ... correct, that is, [that the position] has a reasonable basis in law and fact." *Pierce v. Underwood,* 487 U.S. 552, 566 n. 2, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). The FAA claims that it has met that standard because ATAC raised five issues in its appeal, and the FAA prevailed on four of them. The Administration argues that we should conclude that the government's position was reasonable "on the full range of issues ATAC presented" and was therefore substantially justified. Brief of the FAA, citing *Roanoke River Basin v. Hudson,* 991 F.2d 132, 139 (4th Cir.1993).

We cannot accept what the government styles as a "holistic approach" to determining whether an agency's position is substantially justified under the Act so as to bar the recovery of attorney fees by a prevailing party. That is, it cannot be the case that Congress intended that a party who prevails on an essential ground of a petition to set aside government action cannot recover the congressionally contemplated fees because the government's action was substantially unjustified on only one of several possible

bases. Virtually any government action is either grouped with other actions or is a component of some greater action. Presumably the government is usually substantially justified on most of its actions. If a litigant who has successfully challenged a government action as substantially unjustified and achieved a complete victory in terms of the relief prayed cannot recover EAJA fees because of this well-nigh universal grouping, then Congress's enactment of the EAJA becomes a virtual nullity. While we do not suggest that the substantial justification question can be determined without context, this does not mean that the context can be so "holistic" as to allow the government's generally justifiable conduct to defeat the otherwise legitimate EAJA claim of a litigant who has succeeded in obtaining precisely the relief it prayed from the government because of the substantially unjustified element under litigation. If the government would defeat ATAC's claim, it must do so by showing that the Administration's use of Ramsey pricing was substantially justified.

The Administration makes a stab at justifying its action. It admits certain inarguable propositions: Congress directed it to "ensure that *each* of the fees required ... is directly related to the Administration's costs of providing the service rendered," 49 U.S.C. § 45301(b)(1)(B) (emphasis added); Ramsey pricing allocates each fee not on a cost basis but on the basis of the inflexibility of the demand among the users; the Administration determined each fee charged ATAC and the other petitioners on the basis of Ramsey pricing. Nonetheless, in the face of these admitted inarguables, the Administration insists that because the total price structure was designed to recover the Administration's costs, that meant that the scheme complied with the statutory requirement that each fee be cost based. To allow that reasoning to control would be to write out of the statute the requirement that "*each* of the fees" be "directly related" to the cost of providing the service rendered. All that the Administration's reasoning can establish is that the totality of the fees charged all users is ultimately related to the cost of providing all services. We cannot hold that an attempt by an agency to completely displace Congress is

substantially justified. We therefore hold that the respondent has failed to meet its burden of establishing that its actions meet this exception to the Equal Access to Justice Act.

### 2. *Special Circumstances*

■ The Administration next argues that even if ATAC's fee petition survives the substantial justification exception, it should be denied under the second statutory exception denying fees when "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The statute makes no attempt to define or in any way delineate what circumstance might be of the special sort warranting an exception to the EAJA. The statutory history, for what it's worth, includes a passage in the House Report accompanying the EAJA describing this exception as a "safety valve" and declaring that it

> helps to insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts. It also gives the court discretion to deny awards where equitable considerations dictate an award should not be made.

H. R. Rep. No. 1418, 96th Cong., 2d Sess. at 11, reprinted in 1980 U.S.C.C.A.N. 4953, 4984, 4990.

With the scant guidance of the sparse legislative language and the snippet of history, courts have generally held that the statutory language expresses a congressional directive for courts "to apply traditional equitable principles" in determining whether a prevailing party should receive a fee award under EAJA. *Oguachuba v. INS*, 706 F.2d 93, 98 (2d Cir.1983). This seems sound as a guiding principle, although we have no occasion to attempt to establish a general rule of limitation on the application of that exception to the fee awards statute. In this case, the Administration contends that "traditional equitable principles" should bar a recovery because the Administration has made full reimbursement of all illegally determined fees to the members of ATAC and others who had paid fees under the improperly determined fee schedule. As the Administration notes,

had it set the fees properly, those members would have paid some amount of money. Thus, to the extent that amounts which could have been lawfully collected from the airlines under properly determined schedules are encompassed within the amounts unlawfully extracted from them but now refunded, the airlines have realized a windfall.

As a bare logical proposition, what the Administration asserts is true. As a practical guideline to whether ATAC should recover a fee award in this case, the proposition is of little help. Neither the Administration, nor the petitioner, nor the court has any real idea what the numbers would be in the phantom calculation proposed by the Administration. The theoretical application of general principles of equity is not the sort of application of traditional principles upon which courts have based a denial of fee award in other cases. For example, in *Oguachuba*, upon which the Administration relies, the habeas corpus petitioner who was seeking the fee award had repeatedly violated federal immigration law in numerous ways "hoping to cause a technical error by the INS which would allow him to remain in this country." Though he indeed prevailed on his writ for habeas corpus, "he would not have been incarcerated in the first place but for his notorious and repeated violations of the United States immigration law." In denying him counsel fees, the Second Circuit, speaking in "classic equity terms," declared him to be "without clean hands." 706 F.2d at 99.

That theme of "unclean hands" pervades the jurisprudence of "special circumstances" under EAJA. In *Taylor v. United States*, 815 F.2d 249 (3d Cir.1987), the court denied attorneys' fees where the applicant had taken advantage of unlawful government action and then challenged that action in order to avoid imprisonment under a valid manslaughter conviction. In *United States Dep't of Labor v. Rapid Robert's, Inc.*, 130 F.3d 345 (8th Cir.1997), the court denied a fee award to a petitioner who had reaped a windfall, but the windfall there was far different than the one argued by the government in the present case. In *Rapid Robert's*, the petitioner had

unquestionably committed illegal acts, but the Department of Labor had imposed some of its penalties under an improperly promulgated regulation. A district court relieved Rapid Robert's of penalties considerably exceeding the amount that actually resulted from the invalidated regulation. There was no argument against the proposition that Rapid Robert's had acted illegally, only that a portion of the fines (in the view of the Circuit an excessive portion) had been remitted. The uncalculated possible windfall in the present case does not bear the same stigma of unclean hands, nor should it cause the same result.

In sum, the FAA has not established that this case comes within either of the exceptions to the fee award statute of EAJA, 28 U.S.C. § 2412(d). We therefore will enter an award as prayed by petitioner.

### B. *Amount*

█ Although we conclude that the petitioner is entitled to an award, we nonetheless must consider the Administration's objections to the amount prayed. As the Administration argues, ATAC prevailed on only one of the grounds asserted. The Administration contends that under *National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1327 (D.C.Cir.1982), ATAC should therefore only be awarded fees for the amount of attorney time spent on that issue. ATAC does not dispute this proposition. Because ATAC does not raise the issue, we need not consider whether the present petition is governed by *National Ass'n of Concerned Veterans* or by *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), which held that:

> Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

Given petitioner's concession, we accept the government's proposition that only time spent on the Ramsey pricing issue will be compensable.

Petitioner has filed an affidavit setting forth the hours worked on this litigation by various professionals. The application further contains calculations applying to the hours worked, fee rates reflecting the cap of $125 per hour imposed by EAJA, 28 U.S.C. § 2412(d)(2)(A)(i) & (ii). After making other adjustments, the applicant applies a 40% multiplier to the figure to represent the portion of the total time which ATAC asserts was devoted to the issue on which it prevailed. Based on its calculations, ATAC prays a total of $99,246.93.

The Administration attacks the reasonableness of the amount on two bases. First, it asserts that the 40% figure is too high, and that 25% (or less) would be reasonable. It offers little support for this proposition. The FAA argues only that the ground for ATAC's success was a "narrow" one, and that the court's opinion on the merits devoted only 25% of its space to the issue. Neither of these arguments is helpful. We are not at all certain what the Administration means by the "narrowness" of the ground, but we know that it was broad enough to entitle the petitioner to all the relief prayed. As to the percentage of time properly allotted to the successful issue, the ratio of the space devoted to it in our opinion to the total length of the opinion bears no necessary relationship to the ratio of the time afforded the issue by ATAC's professional representatives to the total time those professionals expended on the case. Indeed, as ATAC points out, the space ratio in its brief yields a 44% figure. The best evidence before us as to a proper percentage is the affidavit of the submitting professional, and the Administration has done nothing to affect its credibility. We therefore employ the 40% figure submitted by ATAC.

█ The Administration's other argument for reducing ATAC's prayer for fees is that some of the fees and expenses incurred were attributable to the administrative proceedings prior to the litigation before us and not to the litigation itself. As the Administration notes, a petitioner for fees under EAJA "is foreclosed from claiming fees for proceedings before the agency unless those proceedings involved an 'adversary adjudication.'" *Hirschey v. FERC*, 760 F.2d 305, 311 (D.C.Cir.

1985). Again, however, ATAC's petition, affidavit, and accompanying documentation support its claim, and as to attorneys' fees, we will not reduce the amount prayed.

The Administration relies on the factually correct assertion that much of the professional time for which ATAC claims was incurred in connection with its unsuccessful motion for a stay pending the appeal. ATAC claims that the work performed in preparation for the state petition, *e.g.*, in preparing arguments on the "likelihood of success," contributed to the ultimate result obtained in this litigation. We find the petitioner's assertion persuasive. As the Ninth Circuit observed in a fee awards case under a civil rights statute, 42 U.S.C. § 1988, "Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war." *Cabrales v. County of Los Angeles,* 935 F.2d 1050, 1053 (1991). We agree with the Ninth Circuit that a litigant "who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage." *Id.* Accordingly, we award ATAC the amount prayed.

### Conclusion

For the reasons set forth above, we are entering contemporaneously with the filing of this opinion an order allowing ATAC's petition for fees in the amount of $99,246.93.