**REVISED June 28, 2019**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-60753

United States Court of Appeals
Fifth Circuit

**FILED**
June 7, 2019

Lyle W. Cayce
Clerk

W.M.V.C.; A.P.V.,

Petitioners,

versus

WILLIAM P. BARR, U.S. Attorney General,

Respondent.

Petition for Review of an Order of
the Board of Immigration Appeals

Before KING, SMITH, and WILLETT, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

W.M.V.C. and her daughter A.P.V. are Honduran immigrants who appealed the dismissal of their applications for asylum and withholding of removal. We granted the government's motion to remand to allow the Board of Immigration Appeals ("BIA") to consider the issues raised in the petitioners' opening brief. Petitioners seek to recover attorneys' fees and expenses under the Equal Access to Justice Act ("EAJA"). Because the government's position as a whole was substantially justified, we deny the petition for review.

I.

In 1999, W.M.V.C. began work as a housekeeper for Angelica Perez, who soon professed her love for W.M.V.C. and forcibly insisted that they live together in a romantic relationship. For the next sixteen years, Perez frequently raped and abused W.M.V.C.—sometimes in front of W.M.V.C.'s two children. Perez also regularly beat the children and threatened to kill W.M.V.C.'s family if she attempted to leave. To prevent the possibility of escape, Perez locked the door and windows anytime she left the house. W.M.V.C. attempted to escape twice, but her efforts incurred only greater mistreatment.

Despite the continual violence, W.M.V.C. never contacted the police, many of whom were close friends with Perez. As a retired officer, Perez frequently invited her former colleagues to her home for drinks. On those occasions, the police observed Perez locking W.M.V.C. and the children in a backroom yet failed to intervene. Once, when W.M.V.C.'s brother filed a complaint against Perez for nearly hitting W.M.V.C.'s sister with a car, the police took Perez into custody. But they soon released her, advising her to kill W.M.V.C.'s siblings if they continued to meddle in her affairs.

As the years passed, rumors began to percolate that Perez and W.M.V.C. were romantically involved. Neighbors discussed "how disgusting it was that [W.M.V.C.] lived with another woman" and how "rape would fix her." After a gang member threatened to kill W.M.V.C. in an effort to extort money, she made one final attempt to escape. When petitioners succeeded in fleeing to the United States in 2015, Perez created a fictitious Facebook account for her unwilling lover, ostensibly professing W.M.V.C.'s affections for Perez.

Petitioners applied for asylum and withholding of removal. W.M.V.C. maintained that she had a well-founded fear of future persecution in Honduras based on her perceived homosexuality and anti-gang political opinion.

Moreover, she averred that she had been persecuted on account of her membership in four particular social groups: (1) Honduran women unable to leave a domestic relationship; (2) Honduran women viewed as property by virtue of their status in a domestic relationship; (3) Honduran women without a male protector; and (4) Honduran female business managers without a male partner. Finally, W.M.V.C. sought protection under the Convention Against Torture ("CAT"), alleging that the Honduran police were willfully blind to Perez's abuse.

In her independent application, A.P.V. rehashed many of those same claims. She also alleged persecution as a member of W.M.V.C.'s nuclear family. All told, petitioners advanced eight distinct grounds for asylum and withholding of removal.

The immigration judge ("IJ") found petitioners "generally credible" but denied their applications. Though recognizing that homosexual individuals may constitute a cognizable particular social group, the IJ concluded that "[Perez's] abusive behavior was not motivated by any alleged perception that [W.M.V.C.] was homosexual." The IJ determined that petitioners' other proposed social groups were not viable and that, even if they were, petitioners had not demonstrated persecution on account of their membership in those groups or imputed political opinion. In denying CAT relief, the IJ reasoned that the police were neither "aware of any torture" nor "operating under color of law" during their social visits to Perez's home. As a result, the IJ found no proof that Honduran police acting in their official capacity would participate or acquiesce in petitioners' alleged torture.

The BIA affirmed. Without addressing whether the proposed social groups were cognizable, the BIA determined that petitioners had not encountered any past—and would not face any future—harm based on their

membership in those groups or their political persuasion. The BIA further held that the officers had observed no torture when visiting Perez's home in their personal capacity.

We granted petitioners' unopposed motion for a stay of removal pending this petition for review. In their opening brief, they contended that the agency had failed to respond to the substance of the sexual-orientation claim and to consider evidence offered in support thereof. Specifically, petitioners high-lighted that the agency never addressed whether W.M.V.C. had a legitimate fear of violence from others besides Perez. They also challenged the agency's conclusion that because Perez's abuse had coincided with her drinking and because "persons may commit uncharacteristic acts and say uncommon things" when inebriated, W.M.V.C. never faced persecution for being a Honduran woman unable to leave a domestic partnership. Lastly, petitioners urged that the BIA had ignored significant evidence showing that the Honduran authori-ties had been aware of the torture but had refused to intervene.

Rather than file a brief in response, the government moved to remand to consider the issues raised in petitioners' opening brief. Yet the government insisted that its motion was not a concession of error and asked that each party bear its own fees and costs. We granted the motion but denied the request that each party pay its own costs. Petitioners then applied for attorneys' fees and expenses under the EAJA.

## II.

Under the "American Rule," each party ordinarily bears its own attor-neys' fees unless Congress has explicitly authorized otherwise. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). The EAJA provides such authorization. It awards attorneys' fees and other expenses to a prevailing party in a civil action against the United States. *See* 28 U.S.C. § 2412(d)(1)(A). As "a partial

waiver of sovereign immunity," the EAJA is "strictly construed in favor of the United States." *Ardestani v. INS*, 502 U.S. 129, 137 (1991). But once an individual plaintiff establishes that he is a prevailing party "whose net worth did not exceed $2,000,000 at the time the civil action was filed," 28 U.S.C. § 2412(d)(2)(B), "the government must pay attorney's fees unless it is able to prove that its position was substantially justified or special circumstances make an award unjust." *Baker v. Bowen*, 839 F.2d 1075, 1080 (5th Cir. 1988).

The "position of the United States" encompasses both "the position taken by the United States in the civil action" and "the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D). The government's position thus includes the underlying decisions of the BIA and the IJ as well as "the government's litigation position defending the agency action." *Sylejmani v. Barr*, No. 16-60556, 2019 WL 1590905, at *4 (5th Cir. Apr. 12, 2019) (per curiam) (unpublished).

"Substantially justified" does not mean "'justified to a high degree,' but rather 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Although "[t]his standard is not overly stringent," *Sylejmani*, 2019 WL 1590905, at *4 (citation omitted), the government must do more than show it is "merely undeserving of sanctions for frivolousness," *Underwood*, 487 U.S. at 566. Instead, it bears "the burden of showing that its position in every stage of the proceedings . . . had a reasonable basis both in law and fact." *Baker*, 839 F.2d at 1080. "The mere fact that the government lost—even if the reviewing court held it acted unreasonably or arbitrary and capriciously—does not alone demonstrate that its position was not substantially justified." *Sylejmani*, 2019 WL 1590905, at *4. Especially where the case involves a novel question on which there is little precedent, courts are chary of finding the

government's position unreasonable.[1]

The government does not contest that petitioners are prevailing parties whose net worth is under the statutory cap.[2] Nor does it dispute that special circumstances make an EAJA award unjust. *See* 28 U.S.C. § 2412(d)(1)(A). Instead, the government maintains that petitioners are not entitled to attorneys' fees because its position was substantially justified. Without defending its stance on W.M.V.C.'s sexual-orientation claim, the government asserts the agency reasonably denied CAT protection and rejected, under *In re A-R-C-G-*, 26 I. & N. Dec. 388 (BIA 2014), *overruled by In re A-B-*, 27 I. & N. Dec. 316 (A.G. 2018), the proposed social group of Honduran women unable to leave a domestic relationship. Because its posture on those two issues was reasonable, the government contends that its position, *in toto*, was substantially justified.

## A.

This case requires us to decide whether the government's position was substantially justified where the agency made multiple determinations—some of which were reasonable and others that were not. That question "has proved to be an issue of considerable conceptual and practical difficulty." *Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 138 (4th Cir. 1993) (citation omitted). The closest the Supreme Court has come to addressing it was in

---

[1] *E.g.*, *Sylejmani*, 2019 WL 1590905, at \*6 (concluding that the government was substantially justified in "addressing this 'novel and difficult' issue" (citation omitted)); *accord Saysana v. Gillen*, 614 F.3d 1, 5 (1st Cir. 2010); *Li v. Keisler*, 505 F.3d 913, 920 (9th Cir. 2007); *Washington v. Heckler*, 756 F.2d 959, 961–62 (3d Cir. 1985).

[2] A prevailing party is "one who has succeeded on any significant claim affording it some of the relief sought." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989). Because petitioners sought a remand to the BIA, our decision to grant such relief constitutes a "judicially sanctioned change in the legal relationship of the parties" that entitles petitioners to prevailing party status. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001); *see also Kellems v. Astrue*, 628 F.3d 215, 216 (5th Cir. 2010) ("The district court's remand made [the plaintiff] a 'prevailing party' for purposes of the EAJA.").

*Commissioner, INS v. Jean*, 496 U.S. 154 (1990).

In *Jean*, the government's position in the underlying litigation lacked justification. But because its opposition to the application for fees was reasonable, the government posited that the prevailing party could not recover fees incurred during the fee-determination phase. *Id.* at 156–57. The Court disagreed. Noting that the EAJA "refer[s] to 'the position of the United States' in the singular," *id.* at 159 (quoting 28 U.S.C. § 2412(d)(1)(A)), the Court explained that the statute "favors treating a case as an inclusive whole, rather than as atomized line-items," *id.* at 161–62. Hence, it concluded that fees may be awarded for all phases of the case even though the government was substantially justified in disputing the fee award. *Id.* at 162. Simply put, "[t]he single finding that the Government's position lacks substantial justification . . . operates as a one-time threshold for fee eligibility." *Id.* at 160.

Admittedly, *Jean* "did not squarely resolve how to determine whether the government's position . . . was substantially justified when it loses on only one issue."[3] That is because *Jean* spoke "to the grouping of various *stages* of litigation" but did not directly address "whether the position of the government compels all *claims* to be grouped for the analysis." *EEOC v. Memphis Health Ctr., Inc.*, 526 F. App'x 607, 614 (6th Cir. 2013) (emphasis added).

Nevertheless, *Jean* has persuaded most circuit courts to award EAJA fees only where the government's position as a whole lacked substantial justification.[4] In making that determination, courts focus on the prominence of the

---

[3] *Roanoke River Basin*, 991 F.2d at 138; *see also Gatimi v. Holder*, 606 F.3d 344, 350 (7th Cir. 2010) (cautioning against "tak[ing] judicial language" in *Jean* "out of context").

[4] Indeed, some courts consider the totality of the circumstances and eschew a claim-by-claim analysis of the government's position. *See Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1168–69 & n.16 (9th Cir. 2019) (en banc); *United States v. Hurt*, 676 F.3d 649, 652 (8th Cir. 2012); *Saysana*, 614 F.3d at 6; *Senville v. Madison*, 331 F. App'x 848, 849 (2d

issues on which the government was substantially justified—rather than merely comparing the rote number of reasonable and unreasonable claims in a single case.[5] Relatedly, courts emphasize the government's prelitigation conduct when assessing the reasonableness of its overall position. *See United States v. 515 Granby, LLC*, 736 F.3d 309, 316 (4th Cir. 2013) (collecting cases).

In contrast, only the D.C. Circuit has rejected "a 'holistic approach' to determining whether an agency's position is substantially justified." *See Air Transp. Ass'n of Can. v. FAA*, 156 F.3d 1329, 1332 (D.C. Cir. 1998). As the court elaborated, "[v]irtually any government action is . . . grouped with other actions," and "[p]resumably the government is usually substantially justified on most of its actions." *Id.* But if a prevailing party "cannot recover EAJA fees because of this well-nigh universal grouping," the court warned, "then Congress's enactment of the EAJA becomes a virtual nullity." *Id.* Consequently, the D.C. Circuit views "the relevant 'position' of the government [a]s that which corresponds to the claim or aspect of the case on which the private party prevailed." *Jacobs v. Schiffer*, 204 F.3d 259, 264 (D.C. Cir. 2000).

Although that approach has some intuitive appeal, the D.C. Circuit has not grappled with—much less mentioned—*Jean*'s command to "treat[] a case as an inclusive whole, rather than as atomized line-items." *Jean*, 496 U.S. at 162. Accordingly, we join the vast majority of our sister circuits in evalu-

---

Cir. 2009); *Hackett v. Barnhart*, 475 F.3d 1166, 1173 n.1 (10th Cir. 2007); *Roanoke River Basin*, 991 F.2d at 139. Alternatively, other courts preliminarily canvas the government's stance on each claim before assessing whether its position, *in toto*, was substantially justified. *See Memphis Health Ctr.*, 526 F. App'x at 615; *Gatimi,* 606 F.3d at 349–50; *United States v. Jones,* 125 F.3d 1418, 1429 (11th Cir. 1997); *Hanover Potato Prods., Inc. v. Shalala,* 989 F.2d 123, 131 (3d Cir. 1993).

[5] *See, e.g., Amezola-Garcia v. Lynch*, 835 F.3d 553, 555 (6th Cir. 2016); *Gatimi,* 606 F.3d at 350; *Nken v. Holder*, 385 F. App'x 299, 301–02 (4th Cir. 2010) (per curiam); *Hackett*, 475 F.3d at 1173 n.1.

ating the government's position under the totality of the circumstances. Provided the government's position as a whole was reasonable, a prevailing party may not recover EAJA fees even though some of the government's actions or arguments were without merit.

B.

Attorneys' fees are unwarranted because the government was the prevailing party on the bulk of petitioners' claims and was substantially justified in denying CAT protection. At most, the government's position on the *A-R-C-G-* claim lacked justification at only one stage of the proceedings. Though the government does not defend the agency's rejection of the sexual-orientation claim, that issue was not a prominent matter in this case. Hence, when viewed in the aggregate, the position of the United States was reasonable.

1.

Petitioners applied for asylum and withholding of removal on eight distinct grounds.[6] But they appealed the agency's rulings only on the CAT, *A-R-C-G-*, and sexual-orientation claims. Consequently, they have waived their challenge on the other five claims.[7] Because the government therefore

---

[6] W.M.V.C. claimed protection under the CAT and maintained that she had been persecuted or had a well-founded fear of future persecution as a (1) perceived homosexual; (2) political opponent of criminal gangs; (3) Honduran woman unable to leave a domestic relationship; (4) Honduran woman viewed as property by virtue of her status in a domestic relationship; (5) Honduran woman without a male protector; and (6) Honduran female business manager without a male partner. A.P.V. asserted many of those same claims and alleged that she had been persecuted as a nuclear family member of W.M.V.C's.

[7] In a footnote, petitioners sought to "preserve their right . . . on remand" to contest the BIA's rejection of their other claims for relief. Nevertheless, "[a]rguments that are insufficiently addressed in the body of the brief . . . are waived." *See, e.g.*, *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 n.7 (5th Cir. 2003) (finding waiver where plaintiffs attempted to raise an argument in a footnote).

prevailed on those issues, its position on them was substantially justified.[8]

## 2.

An alien seeking CAT protection must establish that (1) "it [is] more likely than not that [he] will be tortured upon return to his homeland" and (2) "there [is] sufficient state action involved in that torture." *Garcia v. Holder*, 756 F.3d 885, 891 (5th Cir. 2014). "Torture is an extreme form of cruel and inhuman treatment . . . ." 8 C.F.R. § 208.18(a)(2). It includes "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as . . . intimidating or coercing him . . . , or for any reason based on discrimination of any kind." *Id.* § 208.18(a)(1).

To warrant relief under the CAT, the torture must occur "by, or with the acquiescence of, government officials acting under the color of law." *Hakim v. Holder*, 628 F.3d 151, 155 (5th Cir. 2010). An "official acquiesces to torture when he or she has prior awareness of such activity and thereafter breaches his or her legal responsibility to intervene." *Iruegas-Valdez v. Yates*, 846 F.3d 806, 812 (5th Cir. 2017) (cleaned up). Acquiescence may be under color of law even if it does not represent "officially sanctioned state action." *Garcia*, 756 F.3d at 891. Instead, we consider whether the official's conduct "constitutes a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.*

The agency reasonably found no evidence that Honduran officials acting under color of law would participate or acquiesce in petitioners' alleged torture. After all, petitioners averred that the police had seen Perez lock W.M.V.C. in

---

[8] *See Amezola-Garcia*, 835 F.3d at 555 (finding substantial justification where the government "successfully argued" the majority of the claims on appeal); *Senville*, 331 F. App'x at 849 (affirming denial of attorneys' fees where the agency "prevailed 'on by far the majority of the issues posed by the lawsuit'").

a room yet failed to intervene. But it is not apparent—and petitioners cite no case clearly establishing—that temporarily cloistering someone in a room constitutes the "extreme form of cruel and inhuman treatment" necessary to trigger CAT relief. *See* 8 C.F.R. § 208.18(a)(2).

Additionally, because the officers' visits to Perez's home were of a purely social nature, it is not obvious that the police were acting under color of law. Citing *Laughlin v. Olszewski*, 102 F.3d 190, 192 n.1 (5th Cir. 1996), petitioners urge that "[w]hether a police officer is acting under color of law does not depend on his on-or-off-duty status at the time of the alleged violation." But in *Laughlin*, we held that an officer had acted under color of law in identifying himself as a Houston police officer and "threaten[ing] to use the authority conveyed to him by virtue of his status to arrest [the plaintiff]." *Id.* Conversely, there is no indication that the Honduran police misused their official capacity to harm petitioners during their social visits.

Petitioners fault the agency for not considering that the one time Perez was arrested for reckless driving, the police soon released her. More alarmingly, the police purportedly advised Perez to kill W.M.V.C.'s siblings if they continued to interfere. Yet once again, reckless driving likely does not amount to torture. Because the Honduran authorities did not appear to acquiesce to any known acts of torture, the agency's denial of CAT protection "had a reasonable basis both in law and fact." *Baker*, 839 F.2d at 1080.

### 3.

To qualify for asylum, an alien must show that (1) he "is outside of his country and is unable or unwilling to return because of persecution or a well-founded fear of persecution," and (2) "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for the persecution." *Orellana-Monson v. Holder*, 685 F.3d 511, 518

(5th Cir. 2012) (cleaned up). The standard for obtaining withholding of removal is more stringent than that for asylum, "requiring a showing that it is more likely than not that the alien's life or freedom would be threatened by persecution on one of those grounds." *Id.*

Three factors guide our recognition of a particular social group. First, the group must consist of persons who "share a common immutable characteristic that they either cannot change or should not be required to change because it is fundamental to their individual identities or consciences." *Hernandez-De La Cruz v. Lynch*, 819 F.3d 784, 786 (5th Cir. 2016) (cleaned up). Second, the "shared characteristic" must render the group socially visible or distinct, enabling "a society [to] perceive those with the characteristic in question as members of a social group." *Id.* (citation omitted). Third, the group must "be defined with sufficient particularity to delimit its membership . . . as a discrete class of persons." *Id.* at 786–87 (cleaned up).

In *A-R-C-G-*, 26 I. & N. Dec. at 388–89, the BIA held that "married women in Guatemala who are unable to leave their relationship" constituted a cognizable particular social group. As the BIA reasoned, "marital status can be an immutable characteristic where the individual is unable to leave the relationship." *Id.* at 392–93. Moreover, the group possessed sufficient particularity because "[t]he terms used to describe [it]—'married,' 'women,' and 'unable to leave the relationship'—ha[d] commonly accepted definitions within Guatemalan society." *Id.* at 393. Further delineating the group's membership were "societal expectations about gender and subordination, as well as legal constraints regarding divorce and separation." *Id.* In particular, the BIA found it "significant that the respondent [had] sought protection from her spouse's abuse and that the police [had] refused to assist her because they would not interfere in a marital relationship." *Id.*

The IJ reasonably determined that Honduran women unable to leave a domestic partnership was not a cognizable social group. Notably, W.M.V.C. never married Perez. Petitioners insist that the immutable trait in *A-R-C-G-* was not a person's marital status but the inability to leave a relationship. Though the BIA has clarified that "marital status should not be the determinative factor in deciding a domestic violence asylum claim," its decisions were unpublished and hence "carr[ied] no precedential value."[9] In the absence of clearly established law to the contrary, the IJ reasonably refused to extend *A-R-C-G-* to domestic partnerships. *See Li*, 505 F.3d at 920. That is especially so given that W.M.V.C. identified no societal expectations or legal constraints that prevented her from leaving her relationship with Perez.[10] And unlike the respondent in *A-R-C-G-*, W.M.V.C. made no attempt to contact the Honduran authorities during her sixteen years of abuse.

Nevertheless, the government offers no defense of the IJ's alternative holding that W.M.V.C.'s membership in her proposed social group was not a central reason for the persecution. The BIA relied exclusively on that analysis in affirming the denial of asylum and withholding of removal. Because the government has the burden to justify its "position in every stage of the proceedings," *Baker*, 839 F.2d at 1080, we assume—without deciding—that the BIA's conclusion was unreasonable.

Equally important, the *A-R-C-G-* claim was a prominent issue here. Indeed, it was the first argument made in petitioners' brief before the BIA, and

---

[9] *See Cardona v. Sessions*, 848 F.3d 519, 523 n.5 (1st Cir. 2017) (describing the "ongoing debate about the scope of . . . *A-R-C-G-*"). *A-R-C-G-* was overruled in its entirety after the motion to remand in this case. *See A-B-*, 27 I. & N. Dec. at 333.

[10] *See Macias v. Sessions*, 694 F. App'x 314, 314 (5th Cir. 2017) (per curiam) (holding that petitioner "had not shown that she was unable to leave her domestic relationship and therefore had not shown a reasonable fear of persecution based on membership in a social group of Mexican women defined by that characteristic").

it spanned eleven of the thirty-seven pages of argument.[11]  Similarly, it accounted for seventeen out of the thirty-four pages in their opening brief before this court.  Although the prominence of an issue certainly weighs in our substantial-justification inquiry, the government's stance on the *A-R-C-G-* claim was unreasonable, at most, at only one stage of the proceedings.

4.

The government also does not attempt to justify the agency's denial of the claim that W.M.V.C. had a well-founded fear of future persecution based on her perceived homosexuality.  We thus assume, without determining, that the agency's dismissal of the sexual-orientation claim was unreasonable.

Nonetheless, that claim was not a central issue and received less than two pages of briefing before the BIA.  As petitioners have acknowledged, most of their claims "stem from past persecution"—not the threat of future abuse on account of W.M.V.C.'s perceived homosexuality.  Because that issue did not "constitute the substantive heart of this case," the BIA's ruling did not render the government's overall position unreasonable.  *See Nken*, 385 F. App'x at 301–02.

5.

Petitioners chide the government for failing to seek remand once they filed their appeal or their motion for a stay of removal, which previewed the very arguments they would later make in their opening brief.  Such unreasonable delay, petitioners aver, forced them to brief the case on the merits, resulting in the majority of the fees that they now request.

---

[11] *Cf. Amezola-Garcia*, 835 F.3d at 555 (finding that a particular issue was not "prominent" because it "made up only seven pages out of the twenty-five pages of argument in [petitioner's] brief, and it was the last argument made").

That theory is unpersuasive. Though petitioners pressed the sexual-orientation claim in their stay motion, they also asserted that the agency had erred in denying CAT protection and in concluding that none of their proposed social groups was viable. As discussed above, however, the agency reasonably dismissed the CAT and social-group claims. Considering petitioners' claims were thus a mixed bag, the government's litigation position was reasonable: It neither opposed the motion to stay nor conceded error.

\* \* \* \* \*

In sum, the position of the United States was substantially justified. The government was the prevailing party on five out of the eight claims. And it reasonably rejected CAT relief and held that petitioners' proposed social group was not cognizable under *A-R-C-G-*. Therefore, at most, the BIA lacked justification in dismissing the sexual-orientation claim and in finding that W.M.V.C. had failed to show persecution as a Honduran woman trapped in a domestic relationship. Naturally, "[a]ny given civil action can have numerous phases," and "the parties' postures on individual matters may be more or less justified." *Jean*, 496 U.S. at 161. But when viewed "as an inclusive whole," the government's position was substantially justified. *Id.* at 162. Petitioners are thus ineligible for an EAJA award.

The petition for review is DENIED.

15

KING, Circuit Judge, dissenting:

W.M.V.C. and A.P.V. prevailed on their petition for review. They are thus entitled to an attorney fee unless the Government's position "was substantially justified." 28 U.S.C. § 2412(d)(1)(A). The Government all but concedes that its opposition to the petitioners' perceived-homosexuality asylum claim was not substantially justified.[1] Nevertheless, the majority concludes that the Government's position as a whole was substantially justified because the Government made reasonable arguments in opposition to the petitioners' alternative grounds for relief. I disagree. The Government's position was that the petitioners must be removed from the United States. That the Government was wrong for only one of several possible reasons does not make its position any more justified as a whole. I would grant the petitioners' motion for an attorney fee.

In weighing a motion for an attorney fee under the Equal Access to Justice Act ("EAJA"), we must identify the Government's "overall position" and ask whether that position was substantially justified. *Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 140 (4th Cir. 1993). In certain cases more complex than the one at bar, identifying the Government's overall position can pose a confounding challenge. *See, e.g.*, *United States v. 515 Granby, LLC*, 736 F.3d 309, 317 (4th Cir. 2013). But this hand-wringing is not needed here; the Government's position is readily identifiable without breaking the case into

---

[1] The Government does not argue that its position with respect to the petitioners' perceived-homosexuality argument was substantially justified. The Government has the burden of showing that its position was substantially justified, *Sims v. Apfel*, 238 F.3d 597, 602 (5th Cir. 2001), so its failure to defend its position on the perceived-homosexuality argument resolves that issue for the sake of this motion. The majority does not assert otherwise.

"atomized line items," as the Supreme Court has cautioned us against. *Comm'r, INS v. Jean*, 496 U.S. 154, 161-62 (1990).

The majority stumbles by confusing alternative arguments with separable challenges to discrete governmental actions. The Government here did not "ma[k]e multiple determinations," as the majority asserts. If that were so, then I would agree with the majority's decision to identify the most prominent issues and consider whether the Government's positions with respect to those issues were substantially justified. *See, e.g., Amezola-Garcia v. Lynch*, 835 F.3d 553, 555 (6th Cir. 2016) (considering whether Government's denial of withholding of removal or denial of voluntary removal was more prominent action driving litigation). But the Government made only one determination here—that the petitioners must be removed. And when a litigant challenging a single administrative determination does so with alternative *arguments*, the success on any one of which requires a complete remand to the agency, most courts focus only on the Government's position with respect to the litigant's winning argument. *See Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499 (6th Cir. 2014) ("The inclusion of three unsuccessful claims in Glenn's petition for review did not undermine the inevitability of remand."); *Hackett v. Barnhart*, 475 F.3d 1166, 1173 n.1 (10th Cir. 2007) ("[T]he fact that the Commissioner prevailed in the district court on most issues did not alter the fact that she acted unreasonably in denying benefits at the administrative level."); *Air Transp. Ass'n of Can. v. FAA*, 156 F.3d 1329, 1332 (D.C. Cir. 1998) ("[I]t cannot be the case that Congress intended that a party who prevails on an essential ground of a petition to set aside government action cannot recover the congressionally contemplated fees because the

government's action was substantially unjustified on only one of several possible bases.").[2]

This approach best achieves the EAJA's "specific statutory goals of encouraging private parties to vindicate their rights and 'curbing excessive regulation and the unreasonable exercise of Government authority.'" *Jean*, 496 U.S. at 164-65 (quoting H.R. Rep. No. 96-1418, at 12 (1980)). In penalizing the petitioners for challenging their deportation, the majority's approach will discourage future litigants from challenging unreasonable exercises of governmental power because the litigants might get stuck with the cost of doing so if the Government can reasonably oppose a substantial enough alternative argument.

To the extent litigants do challenge unreasonable governmental actions, I fear the majority's approach will perversely disincentivize litigants from making alternative arguments. Under the majority's approach, a litigant is best advised to stick only to its strongest argument, lest a weaker (though perhaps still winning) alternative argument be deemed more prominent. After

---

[2] Admittedly, one case supports the majority's approach. *See Gatimi v. Holder*, 606 F.3d 344, 349-50 (7th Cir. 2010). But *Gatimi* carries little persuasive value. The court cited no authority for the proposition that the Government's position on the more prominent of two individually sufficient alternative arguments should constitute its overall position in a litigation. *See id.* Nor did the court provide any further analysis considering the wisdom of this approach or acknowledge that its approach directly conflicted with the Tenth Circuit's analysis in *Hackett*. *See id.* I would not follow it without independent justification.

To the extent the majority views its opinion as falling on the heavier-trafficked side of a circuit split, it is incorrect. Of the numerous cases the majority cites, only *Gatimi* takes the majority's totality approach when addressing individually sufficient alternative arguments challenging a single governmental action. *Hackett* and *Glenn* directly contradict the majority's position, while the other cases the majority cites do not squarely confront the question currently before us. Thus, the majority stands alone with the Seventh Circuit, while I would join the Sixth, Tenth, and D.C. Circuits. Although I would do so for better reasons than nose-counting alone.

all, if the petitioners in this case had raised only their perceived-homosexuality argument, then under the majority's approach, they would have been entitled to an EAJA award. "But litigation is not an exact science. In some cases, the lawyer's flagship argument may not carry the day, while the court embraces a secondary argument the lawyer rated less favorably." *Goos v. Nat'l Ass'n of Realtors*, 68 F.3d 1380, 1386 (D.C. Cir. 1995). As the en banc Ninth Circuit recently recognized, penalizing attorneys (especially those relying on an EAJA award for their compensation) for making alternative arguments "would put lawyers in an untenable ethical position." *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1176 (9th Cir. 2019) (en banc); *see also Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. *The result is what matters*." (emphasis added)).

Awarding an attorney fee here would not render undue harm to the public fisc. The rule for which I advocate would award an EAJA fee only when the Government could have avoided the litigation altogether by acting reasonably. Here, if the Government had recognized the weakness of its opposition to the petitioners' perceived-homosexuality argument earlier, it could have granted them asylum (or at least developed a sounder basis for denying asylum) and saved them the substantial sum of money they spent developing their opening brief.

For these reasons, I would conclude the Government's position in this case was not substantially justified and award the petitioners an attorney fee. I respectfully dissent.