**ROANOKE RIVER BASIN ASSOCIATION, Plaintiff–Appellant,**

**and**

**State of North Carolina; Brunswick County, Virginia, Board of Supervisors; Charlotte County, Virginia, Board of Supervisors; Granville County, North Carolina; Halifax County, Virginia, Board of Supervisors; Halifax County, North Carolina; Martin County, North**

Carolina; Mecklenburg County, Virginia, Board of Supervisors; Northampton County, North Carolina; Vance County, North Carolina; Warren County, North Carolina; Washington County, North Carolina, Plaintiffs,

v.

Ronald E. HUDSON, Colonel, in his official capacity as Norfolk District Engineer; Wayne A. Hanson, in his official capacity as Wilmington District Engineer; Joseph K. Bratton, Lt. Gen., in his official capacity as the Chief of Engineers of the U.S. Army Corps of Engineers, Defendants–Appellees,

and

William R. Gianelli, in his official capacity as Assistant Secretary of the U.S. Department of the Army; John O. Marsh, in his official capacity as Secretary of the U.S. Department of the Army; City of Virginia Beach, Defendants.

No. 92–1526.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 3, 1993.

Decided April 20, 1993.

Patrick Michael McSweeney, McSweeney, Burtch & Crump, P.C., Richmond, VA, argued (Michael V. Hernandez, on the brief), for appellant.

J. Carol Williams, U.S. Dept. of Justice, Washington, DC, argued (Vicki A. O'Meara, Acting Asst. Atty. Gen., Robert L. Klarquist, Glen R. Goodsell, U.S. Dept. of Justice, Washington, DC, Margaret Person Currin, U.S. Atty., Raleigh, NC, on the brief), for appellees.

Before HALL, MURNAGHAN, and NIEMEYER, Circuit Judges.

## OPINION

NIEMEYER, Circuit Judge:

The Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, provides that parties who prevail in litigation with the United States are entitled to reimbursement of reasonable attorney's fees unless the position of the United States "was substantially justified." 28 U.S.C. § 2412(d)(1)(A). In protracted litigation with the Army Corps of Engineers, the Roanoke River Basin Association challenged the Corps' issuance of a permit to the City of Virginia Beach for the construction of a pipeline to transport 60 million gallons of water per day from Lake Gaston in the Roanoke River basin to Virginia Beach to satisfy its potable water requirements.[1] Although the Association

---

1. The City of Virginia Beach initiated litigation on January 9, 1984, to obtain review and approval of its permit in the Eastern District of Virginia. That case was subsequently transferred to the Eastern District of North Carolina, following our decision in *City of Virginia Beach v. Roanoke River Basin Ass'n,* 776 F.2d 484 (4th Cir.1985), in which we found the Virginia court lacked personal jurisdiction over the governor of North Carolina, a named defendant. Once the interests of the parties were protected by intervention in this case, the transferred case was dismissed.

was unsuccessful in blocking the issuance of the permit, the district court found that on at least one issue the Association was a "prevailing party." The court nevertheless denied the Association an award of attorney's fees because it found the position of the Corps in processing the permit was substantially justified.

On appeal, the Roanoke River Basin Association does not contest the district court's finding that the overall position of the Corps was substantially justified. Rather, it contends that *on the issue on which it prevailed*, the Corps' position was not substantially justified. The Association maintains that the district court erred as a matter of law by focusing its attention on the litigation as a whole for resolving the question of whether the Corps' position was substantially justified when the court found that the Association was a prevailing party on only one issue. We disagree and affirm the judgment of the district court.

I

The State of North Carolina and other parties interested in protecting the water resources of the Roanoke River basin instituted this litigation against the Army Corps of Engineers in January 1984. They challenged the Corps' issuance of a permit to Virginia Beach for the construction of a pipeline from Lake Gaston, which straddles the Virginia–North Carolina border, to Virginia Beach, a distance of some 85 miles, to supply Virginia Beach with potable water, which had been in short supply. The Roanoke River Basin Association intervened in the litigation in May 1984 and in its complaint sought to declare the Corps' permit and water supply storage agreement with the City of Virginia Beach "null and void and of no effect." In its nine-count complaint, the Association alleged a long list of deficiencies attributed to various failings

that it imputed to the Corps' consideration of inadequate information, biased processing of the permit, and result-oriented decision-making. More specifically, the Association alleged that the Corps failed to consider relevant and available studies and information from other agencies; failed to assess Virginia Beach's specific needs for the pipeline; failed to consider the practicality of reasonable alternatives; failed to consider the impact of the diversion of water on the needs of the communities in the Roanoke River basin, including residential, recreational, commercial, and industrial uses; failed to consider the impact of the project on water quality in the Roanoke River and on the environment, including the impact of the project on the striped bass that spawn in the Roanoke River; and erroneously concluded that an Environmental Impact Statement was not necessary. Indeed, it may be fairly stated that in its 35–page complaint the Association challenged the Corps' permit on virtually every basis on which its issuance rested.

On motions for summary judgment filed by all parties, the district court, after considering the administrative record developed in Norfolk consisting of 13 volumes and 254 exhibits, an administrative record developed in Wilmington consisting of several volumes, and additional documents submitted by the parties during the summary judgment process, rejected the challenges of the Association in every respect except two, finding that:

> Although the Corps failed to consider some relevant factors which require a remand for the reconsideration of its determination, on the whole the Corps' decision reflects a careful analysis of the environmental and non-environmental factors implicated by the permit and water storage reallocation contracts.

This case, raising the same issues, was commenced by the State of North Carolina a few days after the case filed in Virginia. Following a remand of the matter to the Corps for further investigation, *North Carolina v. Hudson*, 665 F.Supp. 428 (E.D.N.C.1987), the district court ultimately upheld the pipeline project's legality, *North Carolina v. Hudson*, 731 F.Supp. 1261 (E.D.N.C.1990). We affirmed in *Roanoke River*

*Basin Ass'n v. Hudson*, 940 F.2d 58 (4th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1164, 117 L.Ed.2d 411 (1992).

A collateral issue of what construction could commence pending issuance of a permit from the Federal Energy Regulatory Commission was decided in *North Carolina v. City of Virginia Beach*, 951 F.2d 596 (4th Cir.1991).

*North Carolina v. Hudson,* 665 F.Supp. 428, 449–50 (E.D.N.C.1987). On the two aspects excepted, the court concluded that the Corps' analysis was not adequately supported, and it remanded those issues to the Corps, retaining jurisdiction over the case. *Id.* at 450. In particular, the court concluded that in connection with the project's impact on the striped bass, the Corps relied on Virginia Beach's worst case projections, rather than conducting its own independent analysis, leaving open the possibility that the permit could be based on false premises or misinformation. The court also concluded that the Corps had not made a specific determination of the extent to which Virginia Beach's water needs supported the 60 million-gallon-per-day amount authorized by the permit.

After conducting more hearings and receiving more evidence on remand, the Corps issued a Supplemental Environmental Assessment, a Supplemental Statement of Findings, and a Revised Finding of No Significant Impact. These documents reaffirmed the necessity of the permit amount of 60 million gallons per day, the conclusion that any potential effect on the striped bass would be minimal, and the determination that an Environmental Impact Statement was unnecessary. Notwithstanding its conclusion that the pipeline project would have no significant impact on the striped bass, the Corps amended the permit's conditions to include a mitigation measure that Virginia Beach be required, as a condition of the permit, to allow use of some of its stored water during the bass' spawning period in the unlikely event that it might be needed to maintain the flow of the river. The Corps concluded that this mitigation measure "will virtually eliminate the possibility of any adverse effects of even minimal significance which this project could cause during the critical life stages of the Roanoke/Albemarle striped bass." *North Carolina v. Hudson,* 731 F.Supp. 1261, 1266 (E.D.N.C.1990).

The district court reviewed the record as expanded during the remand proceedings and upheld the issuance of the permit. 731 F.Supp. at 1273. On appeal we affirmed, concluding that "[t]he Army Corps of Engi-

neers properly considered all factors that it was required to consider before issuing a permit. Its decision to issue a permit for the project shall not be disturbed." *Roanoke River Basin Ass'n v. Hudson,* 940 F.2d 58, 66 (4th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1164, 117 L.Ed.2d 411 (1992).

In connection with the two issues remanded by the district court to the Corps, the Roanoke River Basin Association filed a petition under the EAJA for attorney's fees in the amount of $174,248 and expenses of $6,109. The district court found that the Association "did succeed on a significant issue—the striped bass issue—and that that success achieved at least some of the benefit RRBA [Roanoke River Basin Association] sought: further review of the problem and a mitigation measure to help protect the striped bass. Hence, RRBA is a prevailing party." Rather than focusing on the striped bass issue in determining whether the United States' position was substantially justified, however, the court looked more broadly to the entire proceedings, concluding as follows:

> The court's 1987 decision held merely that the Corps failed to take a hard enough look at the striped bass problem and the extent of the water need. In light of the magnitude of the project, the Corps' significant tasks under relevant environmental statutes and regulations, and the Corps' overall "careful analysis of the environmental and nonenvironmental facts," 665 F.Supp. at 449–50, the court concludes that the Corps' initial SOF [Statement of Facts], EA [Environmental Assessment], and FONSI [Finding of No Significant (Environmental) Impact], were not unreasonable in fact or law. Rather, the Corps' position was substantially justified within the meaning of EAJA.

The court indicated in its decision that it was unable to find any authority that required it to focus on the question of whether the government's position on "specific, isolated issues was substantially justified," and it indicated that the Supreme Court's decision in *Commissioner, INS v. Jean,*

496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990), suggests otherwise. This appeal followed.

## II

Section 2412(d)(1)(A) of Title 28 provides in pertinent part:

[A] court shall award to *a prevailing party* other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States in any court having jurisdiction of that action, *unless the court finds that the position of the United States was substantially justified....*

(Emphasis added).[2] In concluding that the Roanoke River Basin Association is a "prevailing party," the district court found that the Association succeeded on a significant issue which achieved *some* of the benefits sought by the litigation, i.e., the Corps' reviewing the striped bass issue and adopting a mitigating measure to help protect the bass. *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (defining "prevailing party"). The court, however, rejected the Association's contention that it should focus only on the striped bass issue in determining whether the Corps' position was substantially justified, concluding that the Corps' position *in the litigation* was substantially justified. Thus, notwithstanding its finding that the Corps had been arbitrary and capricious in failing to make an independent determination of the project's effect on the striped bass and in relying on the Virginia Beach worst case scenario, the district court concluded, "In light of the magnitude of the project, the Corps' significant tasks under relevant environmental statutes and regulations, and the Corps' 'overall careful analysis of the environmental and non-environmental facts,'"[3] the Corps' position was "not unreasonable in fact or law."[4]

The Roanoke River Basin Association contends that the district court's approach constitutes a "flat error of law." It maintains that "[i]t is incongruous to require only partial success for determining whether a party prevails, but then to deny fees and expenses because the government prevailed on a majority of the issues in the case."

The Corps contends the district court ruled properly on this issue, relying principally on *Commissioner, INS v. Jean.*[5] In

---

**2.** Other provisions of the EAJA, not relevant here and therefore not quoted, establish additional requirements that must be met before a fee award can be made. The Supreme Court has summarized the requirements:

[E]ligibility for a fee award in any civil action requires: (1) that the claimant be a "prevailing party"; (2) that the Government's position was not "substantially justified"; (3) that no "special circumstances make an award unjust"; and, (4) pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement.

*Commissioner, INS v. Jean,* 496 U.S. 154, 158, 110 S.Ct. 2316, 2319, 110 L.Ed.2d 134 (1990).

**3.** The internal quotation is from the district court's initial disposition of the merits of the underlying case, *North Carolina v. Hudson,* 665 F.Supp. 428, 449–50 (E.D.N.C.1987).

**4.** In *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), the Court elaborated on the meaning of "substantially justified" in the context of the EAJA, concluding that the phrase does not mean "justified to a high de-

gree," but rather represents a position of substance—"that is, justified to a degree that could satisfy a reasonable person. That is no different from the 'reasonable basis both in law and fact' formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue." *Id.* at 565, 108 S.Ct. at 2541. The Court added, "To be 'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness." *Id.* at 566, 108 S.Ct. at 2550. *See also United States v. Paisley,* 957 F.2d 1161, 1165 (4th Cir.1992).

**5.** The Corps also contends that the Roanoke River Basin Authority was not a "prevailing party" because it failed to achieve virtually every aspect of the relief sought. Even though the Corps was required to take another look at its conclusions that the striped bass would not be adversely affected and that an Environmental Impact Statement is not required, it was never required to change its position on these points. Because we affirm the district court on the grounds that the government's position is substantially justified, we do not reach the question of whether the court erred in concluding that the Association is a prevailing party.

*Jean*, it was found that the fee petitioners, a class of Haitians challenging their detention in prison by the INS while awaiting classification, were prevailing parties and that the INS' position on its own regulations was unreasonable and not substantially justified. In the proceeding to determine the appropriate amount of attorney's fees, however, the INS argued that, because its position *in the fee determination phase* of the case was justified, it should not be required to reimburse petitioners for their fees in prosecuting that portion of the litigation. The Supreme Court held that once the criteria of the EAJA are met *in a single case in its entirety*, the extent to which fees are awarded for a particular phase is left to the discretion of the trial court without the necessity of finding whether each separate phase of the litigation meets the requirements of the EAJA. "The single finding [that the EAJA criteria are met] thus operates as a one-time threshold for fee eligibility" in the entire case. 496 U.S. at 160, 110 S.Ct. at 2320.

While it is apparent, therefore, that *Jean* instructs that a single finding of governmental misconduct compelling a party to resort to litigation or to prolong litigation can open the door to recovery under the EAJA, it is not entirely clear whether Congress intended that *any* misconduct or unreasonable stance by the government during the course of numerous phases of litigation can give rise to an award. Relying on the words of the EAJA, the Court in *Jean* concluded that "[w]hile the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole." *Id.* at 161–62, 110 S.Ct. at 2320–21. The Court noted that the language of the statute refers to an award in a *civil action*, in the singular, "without any reference to separate parts of the litigation." *Id.* at 159, 110 S.Ct. at 2319. The holding in *Jean*, however, did not squarely resolve how to determine whether the government's position in the action was substantially justified when it loses on only one issue.

We have previously noted generally that determining whether the government's position is substantially justified for the resolution of an EAJA claim "has proved to be an issue of considerable conceptual and practical difficulty." *United States v. Paisley*, 957 F.2d 1161, 1165 (4th Cir.1992). We now confront another aspect of this difficulty: the question of whether we focus only on the issue on which the fee petitioning party prevailed or on the entire litigation when determining whether the government's position was substantially justified.

■ The EAJA was enacted to address Congress' concerns with civil actions in which the government is litigating against private parties whose resources are substantially outweighed by those of the government. Absent a potential right for reimbursement of litigation expenses, a private litigant might be coerced to agree to orders that represent an unreasonable exercise of government power and reflect an erroneous or inaccurate application of an agency rule of general application. It was anticipated that, by providing a mechanism for leveling the playing field, not only would access by private litigants to the courts and administrative proceedings be facilitated, but also the public interest would be served by insuring, through a more balanced adversarial process, that only reasonable governmental positions on policy and rules would be enforced. *See Jean*, 496 U.S. at 163 n. 11, 165 n. 14, 110 S.Ct. at 2322 n. 14. Moreover, it is clear that Congress intended to address governmental misconduct whether that conduct preceded litigation, compelling a private party to take legal action, or occurred in the context of an ongoing case through prosecution or defense of unreasonable positions. *See Thompson v. Sullivan*, 980 F.2d 280, 281–82 (4th Cir.1992) (citing *Jean*, 496 U.S. at 158–60, 110 S.Ct. at 2318–20); *Crawford v. Sullivan*, 935 F.2d 655, 656–57 (4th Cir.1991) (same).

■ Although *Jean* did not resolve whether to look to the case as a whole in determining whether the government's position was substantially justified, we must begin with the observation that it surely

discourages an issue-by-issue analysis of the government's posture throughout each phase of the litigation:

> Any given civil action can have numerous phases. While the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items.

496 U.S. at 161–62, 110 S.Ct. at 2320–21. While we do not construe the Court's statement to mean that we may look only at the government's macrocosmic position before or during litigation to determine whether it is substantially justified, we do rely on *Jean* as directing a more broadly focused analysis that would reject the view that *any* unreasonable position taken by the government in the course of litigation automatically opens the door to an EAJA fee award. Accordingly, we conclude that when determining whether the government's position in a case is substantially justified, we look beyond the issue on which the petitioner prevailed to determine, from the totality of circumstances, whether the government acted reasonably in causing the litigation or in taking a stance during the litigation. In doing so, it is appropriate to consider the reasonable overall objectives of the government and the extent to which the alleged governmental misconduct departed from them.

■ Thus a more egregious example of misconduct might, even if confined to a narrow but important issue, taint the government's "position" in the entire case as unreasonable, whereas a totally insupportable and clearly unreasonable position by the government on an inconsequential aspect of the litigation might not. Similarly, a broader government position that, considered in a vacuum, would not be clearly egregious might still, in the overall context of the case, constitute an unreasonable position because of its impact. Although an unreasonable stance taken on a single issue may thus undermine the substantial justification of the government's position, that question can be answered only by looking to the stance's effect on the entire civil action. We therefore conclude that, while

a party may become a "prevailing party" on a single substantive issue from which benefit is derived, satisfying one prong of the EAJA, it does not automatically follow that the government's position in the case as a whole is not substantially justified.

■ The Association maintains that it is "incongruous" to conclude, on the one hand, that it was a "prevailing party" on one issue and, on the other hand, not to focus *on that issue* when determining whether the government's position was substantially justified. This argument has some logic, but it tends to advance a *per se* rule that whenever a petitioner clearly prevails on any issue, a fee award follows. We do not think these two prongs of the EAJA—whether the petitioner is a prevailing party and whether the government's position is substantially justified—were intended to be so closely linked. It is well established that to be a "prevailing party" a party need only obtain some sought-after relief on a substantial issue in the litigation, *see Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939 (1983), and that the legal relationship of the parties must be materially altered by the relief granted or the settlement reached, *see Farrar v. Hobby*, —— U.S. ——, —— – ——, 113 S.Ct. 566, 572–73, 121 L.Ed.2d 494 (1992). The focus when determining whether a petitioner is a prevailing party is aimed at the degree of success obtained by the petitioner. Whether the government's "position in the litigation" is substantially justified, in contrast, focuses, not on the government's success or failure, but on the reasonableness of its position in bringing about or continuing the litigation. While the EAJA redresses governmental abuse, it was never intended to chill the government's right to litigate or to subject the public fisc to added risk of loss when the government chooses to litigate reasonably substantiated positions, whether or not the position later turns out to be wrong. In short, the policy considerations underlying these two prongs of the EAJA differ, justifying the different scopes of focus.

■ Turning to the case at hand, we recognize that the overall position of the Army Corps of Engineers was its decision to grant a permit for construction of a pipeline from Lake Gaston to Virginia Beach. Secondary to that, it remains undisputed that the Corps traversed all the applicable regulations, finding, after three days of public hearings and a detailed review process, that an environmental impact statement was not required and that Virginia Beach's needs justified the permit. Included within the scope of the Corps' inquiry were the project's impact on the environment and the probable water needs of Virginia Beach. Only in that context was it found that two efforts of the Corps were deficient—the reliance on Virginia Beach's worst case scenario in lieu of an independent assessment of the project's impact on the striped bass and the failure to justify specifically 60 million gallons per day based on actual projected needs of the Virginia Beach area.

The Roanoke River Basin Association undertook to obtain a judgment declaring the permit null and void and thereby to retain the water of Lake Gaston within the Roanoke River basin, primarily because the diversion of water from the basin to the James River basin would adversely affect those in the Roanoke River basin area. As the district court expressly found in this regard,

> [T]he center of the controversy here is the *inter-basin transfer* of water. The controversy is not state against state, but basin against basin, the James River Basin against the Roanoke River Basin.... It is quite natural for citizens to be concerned with the withdrawal of water from the basin in the area in which they live for use in another place.... Nevertheless, whether to permit inter-basin transfer of water is essentially a political decision.

731 F.Supp. at 1272–73. The Association's objective was to overturn such a political decision and have the permit declared null and void on any of a long list of legal grounds. While it lost on all points in the end, in the process it did gain the benefit of an ameliorating measure that the Corps agreed to incorporate in order to eliminate any doubt about the project's effect on the striped bass. The district court found that on this point the Association was a prevailing party.

Without deciding the correctness of the district court's conclusion that the Roanoke River Basin Authority was a prevailing party, we conclude that the court did not err in considering the Corps' position *in the entire case* and the court's finding that that position was not rendered unreasonable by the two deficiencies found is not clearly erroneous. While the district court found that the Corps should have conducted an independent assessment of the project's impact on the striped bass, rather than relying on the applicant's worst case scenario, the independent assessment was thereafter conducted and its results vindicated the Corps' position.

Having concluded that the district court did not err in refusing to atomize the case but properly considered the Corps' "position" in its entirety to determine whether it was substantially justified or was undermined by misconduct in connection with specific issues, we are left only with the task of reviewing the court's exercise of discretion on the mixed question of law and fact whether to award attorney's fees under the EAJA. *See Pierce v. Underwood,* 487 U.S. 552, 562–63, 108 S.Ct. 2541, 2548–49, 101 L.Ed.2d 490 (1988). Finding no abuse of discretion by the district court, we affirm.

*AFFIRMED.*