QUATTLEBAUM, Circuit Judge:
This case involves the application of 8 U.S.C. § 1101(a)(27)(J), a means for immigrant children to become lawful permanent residents of the United States if they meet the statutory special immigrant juvenile ("SIJ") requirements. One of the requirements is a qualifying state court custody order. Today, we address the narrow question of whether the temporary, ex parte emergency order presented by Felipe Perez Perez qualifies as a predicate state court custody order for the SIJ application. The United States Citizenship and Immigration Services (the "Agency"), the Administrative Appeals Office ("AAO") and the district court concluded it did not. For the reasons set out below, we affirm.
I.
A.
Before examining the facts of this case, we briefly summarize the SIJ statute. Under 101(a)(27)(J) ( 8 U.S.C. § 1101 (a)(27)(J) ) of the Immigration and Nationality Act, an SIJ is "an immigrant who is present in the United States":
(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;
(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or *850 parent's previous country of nationality or country of last habitual residence; and
(iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status[.][1]
8 U.S.C. § 1101(a)(27)(J). To become an SIJ, an immigrant child must apply for that status with the Agency. He or she bears the burden of proving the SIJ requirements. Id. § 1361. If an applicant obtains SIJ status, he or she is potentially eligible for lawful permanent resident status. If an SIJ is granted lawful permanent resident status, he or she may eventually apply for United States citizenship.
B.
This case involves Perez's application for SIJ status. Perez was born on July 6, 1997 in Guatemala. At age 16, he unlawfully entered the United States around January 14, 2014. Upon entry, the U.S. government apprehended Perez and placed him into custody. The government initiated removal proceedings against Perez. Shortly thereafter, the government transferred him to North Carolina, where his brother lived, and released him to his brother.
A year later, around January 20, 2015, Perez's brother filed a complaint in state court seeking custody of Perez by alleging that Perez, then 17, was abandoned, neglected and abused by his parents in Guatemala. Perez's brother later filed a Motion for Temporary Emergency Custody. A North Carolina juvenile court issued an order on June 29, 2015, granting ex parte "emergency temporary custody" of Perez to his brother and scheduling a hearing to determine custody for July 22, 2015, just a few weeks later, for which notice to Perez's parents was required. In the order, the juvenile court found that pursuant to N.C. Gen. Stat. §§ 50A-204(a) and 50A-311, it had temporary emergency jurisdiction to protect the child based on the information it had been presented at that time. The court further found that "[r]eunification with the biological parents is not viable due to abuse, neglect, abandonment, or a similar basis found under state law," and, inter alia , that it was in Perez's "best interest for temporary and permanent custody to be awarded to the Plaintiff." J.A. 129.[2] After granting Perez's brother temporary emergency custody and control of the minor child, the juvenile court expressly acknowledged that the "terms of this Order shall remain in effect until the Court date noted below," i.e., July 22, 2015. J.A. 129.
Perez turned 18 on July 6, 2015, just a few days after the emergency order and about two weeks before the scheduled July 22, 2015 hearing. This divested the juvenile court of jurisdiction over Perez. Therefore, the July 22, 2015 hearing never took place.
On his 18th birthday, Perez filed a petition for SIJ status. Perez used the ex parte emergency temporary order as the predicate *851 order for his SIJ application to claim, as required by Section 1101(a)(27)(J)(i) and (ii), that a court had (i) placed Perez under the custody of his brother and determined that reunifying Perez with his parents was not viable due to abuse, neglect, abandonment, or a similar basis under state law; and (ii) determined that it would not be in Perez's best interest to be returned to his previous country of nationality. On or around July 31, 2015, the Agency issued its Notice of Intent to Deny the SIJ petition.
On August 28, 2015, the North Carolina juvenile court issued another ex parte order, this one for judgment nunc pro tunc . That order made the following findings of fact: (1) an action for ex parte temporary emergency child custody was instituted by Perez's brother; (2) an order granting ex parte temporary emergency child custody was granted on June 29, 2015; and (3) "[b]ecause the child turned 18 years old four days after the signing of the Order, the Order granting temporary custody to Plaintiff was as permanent as possible under North Carolina [l]aw." J.A. 88.
On September 23, 2015, the Agency denied Perez's application for SIJ status. The Agency determined that the juvenile court order submitted in support of the petition was "expressly temporary in nature and therefore does not make the finding that reunification with one or both parents is permanently not viable." J.A. 73. After Perez appealed, the AAO reviewed the Agency's decision de novo and dismissed the appeal in a decision dated May 9, 2016.
C.
On October 28, 2016, Perez filed a complaint in the United States District Court for the Western District of North Carolina against the Director of the Agency, seeking declaratory relief and review of the AAO's decision under the Administrative Procedure Act ("APA"). Perez subsequently filed a motion to set aside final agency action. Perez claimed the Agency and the AAO imposed an ultra vires requirement that the predicate custody order required by the SIJ application process be permanent. Alternatively, Perez argued the Agency and AAO acted arbitrarily or capriciously in differentiating between temporary emergency custody orders and permanent custody orders. The Agency moved for judgment on the record affirming the denial of the SIJ application.
The district court rejected Perez's claims. In concluding that the temporary emergency custody order did not suffice to establish the requisite findings for SIJ status, the district court found that the Agency and AAO did not act arbitrarily and capriciously. Instead, the district court held they simply gave the temporary emergency custody order the same effect it would have been given in North Carolina. The district court thus denied Perez's motion to set aside final agency action and granted the Agency's motion for judgment on the record in an order signed March 6, 2018.
Perez filed a timely appeal, and this Court has jurisdiction pursuant to 28 U.S.C. § 1291.
II.
We review both the district court's grant of judgment on the administrative record and denial of Perez's motion to set aside the Agency's action de novo. Am. Whitewater v. Tidwell , 770 F.3d 1108, 1115 (4th Cir.2014) ; Defs. of Wildlife v. N.C. Dep't of Transp. , 762 F.3d 374, 392-93 (4th Cir.2014). That requires us to apply the same legal standards the district court applied in addressing Perez's motion to set aside the Agency's decision and the Agency's motion for judgment on the record.
*852 Lawson v.Union Cty. Clerk of Court , 828 F.3d 239, 247 (4th Cir.2016). The district court properly analyzed the Agency and AAO decisions based on the scope of review permitted under the APA. 5 U.S.C. § 706(2)(A).
Under the APA's deferential standard, the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In determining whether to set aside an agency's action as arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law, a reviewing court must ensure that the agency has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action...." N.C. Wildlife Fed'n v. N.C. Dep't of Transp., 677 F.3d 596, 601 (4th Cir.2012) (alteration in original) (internal quotation marks omitted) (quoting F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 513, 129 S.Ct. 1800, 173 L.Ed.2d 738 (2009) ).
Although this Court will "accord substantial deference to an agency's final action and presume it valid, 'the arbitrary-and-capricious standard does not reduce judicial review to a rubber stamp of agency action.' " Ergon-W. Va., Inc. v. U.S. Envtl. Prot. Agency , 896 F.3d 600, 609 (4th Cir.2018) (quoting Friends of Back Bay v. U.S. Army Corps of Eng'rs , 681 F.3d 581, 587 (4th Cir.2012) ). This Court must conduct a "searching and careful review to determine whether the agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Sierra Club v. U.S. Dep't of the Interior , 899 F.3d 260, 270 (4th Cir.2018) (internal quotation marks omitted) (citing Marsh v. Or. Nat. Res. Council , 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989) ).
But the review under the APA is narrow and highly deferential. Webster v. U.S. Dep't of Agric., 685 F.3d 411, 422 (4th Cir.2012). If the agency has followed proper procedures and has presented a rational basis for its decision, we will not disturb the agency's judgment. Id.
With these standards in mind, we turn to Perez's arguments on appeal.
III.
Perez makes three primary challenges on appeal: (1) the Agency imposed an ultra vires permanency requirement with regard to the state custody order beyond the statutory and legislative intent; (2) the Agency's decision should be set aside as arbitrary and capricious because, even if a permanency requirement is authorized, Perez's custody order was permanent enough to satisfy the Agency's policy manual; and (3) the Agency failed to give full faith and credit to a facially legitimate state custody order and nunc pro tunc order.
A.
As an initial matter, Perez contends that the Agency imposed a "permanency" requirement that is ultra vires and unlawful. Perez argues that neither the text, structure or history of the SIJ statute requires a qualifying custody order to be permanent. Perez argues the statute does not include temporal language pertaining to the required order, and argues that the Agency, in requiring an order to be permanent, has gone beyond its delegated authority.
This Court's review under the ultra vires standard is "necessarily narrow." Ancient Coin Collectors Guild v. U.S. Customs & Border Prot., 698 F.3d 171, 179 (4th Cir.2012). This Court does not stand to "dictate how government goes *853 about its business." Id. Instead, this Court's role is only to determine whether an agency has acted within the bounds of its authority or overstepped them. Id. Government action is ultra vires if the agency or other government entity "is not doing the business which the sovereign has empowered [it] to do or [it] is doing it in a way which the sovereign has forbidden." Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 689, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). Neither situation is present here.
First, Perez mischaracterizes the decisions of the Agency and the AAO in arguing that they impose a permanency requirement. The decisions merely evaluate whether the particular order presented by Perez qualified under the SIJ statute.[3]
To be sure, the Agency and AAO refer to the temporal aspects of the order as part of their decisions. However, neither imposed a categorical permanency requirement to the predicate state court order required by the statute. Likewise, when read in totality, neither decision implied that permanency is essential. In fact, in the analysis portion of its order, the AAO does not use the word permanent other than in its reference to the language of the nunc pro tunc order itself and Perez's own assertions on brief.
Further, the references to the temporal aspects of the order are only part of the Agency and AAO's decisions. The decisions focus more on the terms of the order that reflect its ex parte and emergency nature. To review those terms, the juvenile court invoked temporary emergency jurisdiction based on N.C. Gen. Stat. § 50A-204(a) and § 50A-311.[4] Under North Carolina law, particularly as applied in this context, "[w]hen a court invokes emergency jurisdiction, any orders entered shall be temporary protective orders only." In re Brode , 151 N.C. App. 690, 693, 566 S.E.2d 858, 860 (N.C. Ct. App. 2002) (referencing proceedings in abuse, dependency, and/or neglect cases, and addressing the nature of North Carolina court's ability to exercise jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act). The June 29, 2015 order granted Perez's brother "emergency temporary custody and control of the minor child," ordered notice of the hearing be provided to Perez's parents and specified that the terms of the order remained in effect for less than 30 days. J.A. 129-130. The order was plainly an emergency order based on the limited and ex parte information provided to the court. The order was intended to maintain the status quo until the issues could be addressed in a more substantive manner.[5] Here, the Agency evaluated the *854 order presented by Perez, and found its ex parte , emergency nature did not meet the SIJ requirements under the statute.
Aside from its emergency nature and terms which were only intended to remain in effect for about three weeks, the order was issued without notice to Perez's parents.[6] The emergency order was based on information provided only by Perez's brother without an opportunity for those allegations to be challenged or contested. In other words, Perez's parents were not given notice so that they, if they elected to do so, could contest the allegations in the complaint and oppose an outcome that altered their parental rights. Although we do not doubt the appropriateness of such an order under North Carolina law in the event of an emergency, the Agency and the AAO had the right to consider whether the nature and terms of such an order met the SIJ qualifications under the Act. In carrying out this responsibility, the Agency found that the order, because of its particular terms, did not satisfy the Act's requirements.
Determining whether an order meets the statutory requirements does not exceed or conflict with the Agency's authority. To the contrary, such a determination is exactly what the Agency has been tasked to do. See 8 C.F.R. § 204.11(d) ; Budhathoki v. Nielsen , 898 F.3d 504, 511 (5th Cir.2018) ("This sort of agency obligation to review state court orders for their sufficiency is certainly the approach of the regulations identifying the documents that must be submitted in support of SIJ status....").
We find the Fifth Circuit's decision in Budhathoki v. Nielsen to be persuasive in this regard. In a similar appeal challenging the Agency's denial of an application for SIJ status, the Fifth Circuit noted that the question was "whether the right kind of court issued the right kind of order." Id. at 509. Although a state court makes the initial determinations, the Agency considers whether those orders match the requirements for SIJ status consistent with federal requirements. Id. Ultimately, the Agency determines if the petitioner meets the requirements for SIJ classification, and the burden is on the petitioner to establish eligibility. See 8 U.S.C. § 1361 (burden of proof upon alien). As described above, that is precisely what the Agency did here.
In making these observations about the order, we are not criticizing the North Carolina court. That court did what it could with the information provided. State courts should follow their own state law as *855 it pertains to making custody determinations. But the Agency also has an obligation to determine whether the orders, documentation and other evidence presented satisfy the SIJ statutory requirements for eligibility of a federal benefit. See M.B. v. Quarantillo , 301 F.3d 109, 115 (3d Cir.2002) (recognizing the Immigration and Naturalization Service can reasonably consider the requirements of a petition for SIJ classification). Indeed, the statutory scheme requires that the Secretary of Homeland Security consent to the grant of the SIJ status to confirm the request for SIJ classification is bona fide and not done solely or primarily to obtain an immigration benefit. 8 U.S.C. § 1101(a)(27)(J)(iii). Here, the Agency, a bureau of the Department of Homeland Security, and AAO made a determination as to whether Perez had presented a qualifying predicate order. Making such a determination was within the bounds of their authority. The Agency did not act in an ultra vires way when it determined that the juvenile court order at issue here was not qualifying.
Last, and with all due respect to our good colleague in dissent, neither the decisions below nor this opinion represent an assault on principles of federalism. We join our colleague in support of those principles. Here Perez sought a federal benefit in applying for SIJ status. The federal agency charged with determining whether Perez qualified for that benefit had every right to review the pertinent state court order to see if it qualified. That is all that happened here. Respect for federalism does not require that either the Agency, the AAO or this Court ignore the language of the order-or the way in which the order was obtained-in evaluating whether Perez qualified for SIJ status.[7]
B.
Perez's second point of error is that the Agency's decision should be set aside as arbitrary and capricious because, even if a permanency requirement is authorized, Perez's custody order was permanent enough to satisfy the Agency's manual and was appropriate under North Carolina law. Here again, we disagree with Perez's characterization of the Agency's decision as imposing a "permanent" custody requirement. As fully discussed above, the Agency was simply applying the statute to find that Perez had not presented a qualifying predicate order. The district court properly deferred to the Agency's reasoning, which articulated the Agency's determination about the order's compliance with the SIJ requirements.
The Supreme Court has indicated that the "scope of review under the 'arbitrary and capricious' standard is narrow, and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.' " Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co. , 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (internal citation omitted). Here, the Agency reasonably relied on state law in *856 determining the limited scope of the ex parte temporary emergency order and nunc pro tunc order, as well as the Agency's regulations and other guidance in making its determination. Moreover, the Agency explained its reasons for doing so. Therefore, the decision was not arbitrary or capricious, or otherwise contrary to law.
Further, the district court did not substitute its views for that of the Agency. We decline to do so as well. The district court here found that the juvenile court's ex parte emergency custody order failed to qualify as the necessary juvenile court predicate order. In so doing, the district court recognized the deference afforded to agency decisions, rejected the notion that the Agency added an unauthorized requirement of permanency to the SIJ application process and noted the Agency's decision that proper state-level determinations for SIJ status were not made as defined by North Carolina law. As long as the Agency "provide[s] an explanation of its decision that includes a rational connection between the facts found and the choice made," its decision should be sustained. Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.3d 177, 192 (4th Cir.2009) (internal citations and quotation marks omitted). Although the Court "may not supply a reasoned basis for the agency's action that the agency itself has not given," we will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Motor Vehicle Mfrs. Ass'n of U.S., Inc. , 463 U.S. at 43, 103 S.Ct. 2856 (internal citation and quotation marks omitted). Just as the district court found, we have no trouble tracing the Agency's decisional logic here.
Perez also argues the June 29, 2015 order qualified under the SIJ statute and satisfied the requirements of the Agency's manual because the North Carolina court intended for the order to remain in effect until Perez reached the age of majority. Perez claims this is significant because the Agency's manual states "USCIS generally requires that the court order be valid at the time of filing and must determine that the court intends that the child will not reunify with at least one parent until the child reaches the age of majority." J.A. 192. Perez argues the evidence of the North Carolina court's intent is the fact that the court scheduled a second hearing for July 22, 2015 -a date which fell after Perez turned 18-with the factual knowledge of when he would turn 18. Based on this, Perez argues the Agency's decision was arbitrary and capricious.
This position, while creative, finds no support in the text of the order. The court did not state that the finding related to reunification was intended to last to the age of majority. It simply set a date a mere three weeks in the future where the court could address the issues with appropriate procedural requirements in place. Rather than indicating intent that might make the order qualify under the SIJ statute or the Agency manual, the language in the order instead indicates the North Carolina court recognized the emergency, ex parte order was simply to preserve the status quo.
Further, if the North Carolina court intended for its order to be anything more than an emergency custody order, there would have been no need for that court to issue a second ex parte order, which concluded that "due to the child's age at the time the order was entered, the order was as permanent as possible under North Carolina law." J.A. 89. We, therefore, reject Perez's argument.
C.
Finally, Perez argues that this Court should reverse the district court's decision that the Full Faith and Credit Act does *857 not apply to the Agency's decision. Perez maintains that the Agency failed to give full faith and credit to the state court temporary custody order and nunc pro tunc order. For this argument, Perez cites to our own precedent of Ojo v. Lynch for the proposition the federal government has historically deferred to state-law policy decisions with respect to domestic relations. This proposition is not in dispute. But Ojo referenced the Full Faith and Credit Act simply as an example of the federal policy of deference to state-law policy decisions. Ojo v. Lynch , 813 F.3d 533, 540 (4th Cir. 2016). In recognizing the state law nature of domestic relations matters, Ojo did not hold that the Full Faith and Credit Act applies to agencies.
Turning now to the Full Faith and Credit Act, the Act provides a federal court should, as a general rule, accord prior state adjudications the full force, respect, and effect that they would have under the law of the state in which the judgment was rendered. Robart Wood & Wire Prod. Corp. v. Namaco Indus., Inc. , 797 F.2d 176, 178 (4th Cir.1986) ; Jaffe v. Accredited Sur. & Cas. Co. , 294 F.3d 584, 590 (4th Cir.2002). But the Act does not apply to agencies. The text of the Act is clear. "Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738 (emphasis added). The Agency is not a court. Thus, the plain language of 28 U.S.C. § 1738 establishes that it does not apply to the Agency. See also Am. Airlines, Inc. v. Dep't of Transp ., 202 F.3d 788, 799 (5th Cir.2000) (holding that the "plain language of this section establishes that it does not apply" to an agency); N.L.R.B. v. Yellow Freight Sys., Inc. , 930 F.2d 316, 320 (3d Cir.1991) (holding "federal administrative agencies are not bound by section 1738 because they are not 'courts.' "); McInnes v. California , 943 F.2d 1088, 1095 (9th Cir.1991) (concluding that a state administrative agency was akin to a federal agency and therefore not a court for purposes of 28 U.S.C. § 1738 as a matter of federal law). Accordingly, we find no error in the district court's decision that the Full Faith and Credit Act was inapplicable.
Last, even if the Full Faith and Credit Act applied to agencies, the Agency here gave the proper effect to the relevant state court decisions. Respecting a state court order does not require the Agency to give the order more import than its terms provide. By the June 29, 2015 order's own terms, it was expressly temporary and did not make more than an emergency custody determination to maintain the status quo until a full hearing could be held. Perez's arguments read more into the ex parte emergency order than its terms provide. Accordingly, we find no error in the district court's ruling.
IV.
The district court properly held that the Agency did not impose an ultra vires requirement for permanent custody orders within the SIJ application process. We agree that the Agency did not act arbitrarily, capriciously or contrary to law, or abuse its discretion in determining that Perez failed to present a qualifying predicate order in support of his SIJ petition. Finally, the Full Faith and Credit Act is inapplicable under the facts presented in this case.
Accordingly, the judgment of the district court is
AFFIRMED .

In 2008, Congress passed the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. 110-457, 122 Stat. 5044 (2008) which made significant amendments to the SIJ statute. Congress appropriately named the Act in honor of William Wilberforce, an influential English politician and social reformer. Although his story is unknown to far too many in the United States, Wilberforce's positive contributions are hard to overstate. Wilberforce's most well-known contribution was leading the effort to end slavery in England. Notable American figures like Abraham Lincoln and Frederick Douglass admired Wilberforce and referred to him as the pioneer of the abolitionist movement.

Citations herein to "J.A.___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

The dissent joins with Perez on this issue and we part ways on this foundational point.

Under N.C. Gen. Stat. § 50A-204(a), "[a] court of this State has temporary emergency jurisdiction if the child is present in this State and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." N.C. Gen. Stat. § 50A-204(a). N.C. Gen. Stat. § 50A-311 provides a remedy for emergency situations where there is reason to believe that a child will suffer imminent, serious physical harm or be removed once the respondent learns that the petitioner has filed an enforcement proceeding. When asked during oral argument, however, Perez was unable to identify the nature of the emergency in this case.

Further, the August 28, 2015 nunc pro tunc order does not lead to any different result. The June 29, 2015 order could not be revived by the nunc pro tunc order issued after Perez turned 18, the age upon which he was no longer considered a child under North Carolina law. See N.C. Gen. Stat. § 50A-102(2) (defining "child" as someone (Continued) "who has not attained 18 years of age" for purposes of the Uniform Child-Custody Jurisdiction and Enforcement Act).

Perez claims that under 8 U.S.C. § 1357(h), he should not be required to communicate with an alleged abuser at any stage of applying for SIJ status. Section 1357(h) provides that an alien seeking SIJ status who has been "battered, abused, neglected, or abandoned, shall not be compelled to contact the alleged abuser...at any stage of applying for special immigrant juvenile status...." 8 U.S.C. § 1357(h). By its express terms, however, 8 U.S.C. § 1357(h) is in reference to the SIJ application process and applies once a qualifying order is in place.
North Carolina imposes its own requirements regarding custody determinations, separate and apart from an applicant's petition for SIJ status. Under North Carolina law, before exercising jurisdiction "regarding the parental rights of a nonresident parent, the court shall find that it has jurisdiction to make a child-custody determination under the provisions of G.S. 50A-201 or G.S. 50A-203, without regard to [temporary emergency jurisdiction under] G.S. 50A-204 and that process was served on the nonresident parent ...." N.C. Gen. Stat. § 7B-1101 ; see also In re N.T.U. , 234 N.C. App. 722, 725, 760 S.E.2d 49, 53 (N.C. Ct. App. 2014) (noting a court "must have jurisdiction to make a child-custody determination under the provisions of N.C. Gen. Stat. § 50A-201 or N.C. Gen. Stat. § 50A-203 in order to terminate the parental rights of a nonresident parent.").

Nor does federalism require us to ignore Perez and his brother's apparent attempt to manipulate the ability to obtain emergency ex parte relief under North Carolina domestic relations law to gain an immigration advantage. As noted above, Perez's brother alleged temporary emergency custody of Perez was needed to protect Perez from imminent serious physical harm from Perez's parents in Guatemala. At the time the motion containing this allegation was filed, however, Perez had been in the United States, over 2,700 miles from his parents, for over a year. In fact, when asked at oral argument the basis of the purported emergency, counsel for Perez was unable to provide any explanation.