**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 21-1353**

FELIPE PEREZ PEREZ,

       Plaintiff – Appellant,

v.

UR MENDOZA JADDOU, Director, United States Citizenship and Immigration Services,

       Defendant – Appellee.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert J. Conrad, Jr., District Judge. (3:16-cv-00748-RJC-DSC)

Argued: March 9, 2022                                  Decided: April 12, 2022

Before WILKINSON, KING, and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge King and Judge Quattlebaum joined.

**ARGUED**: Geoffrey Forney, WASDEN BANIAS LLC, Charleston, South Carolina, for Appellant. Sheetul S. Wall, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Brad Banias, WASDEN BANIAS LLC, Charleston, South Carolina, for Appellant. Brian Boynton, Acting Assistant Attorney General, William C. Peachey, Director, Jeffrey S. Robins, Deputy Director, District Court Section, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee

WILKINSON, Circuit Judge:

After prevailing against the government in en banc proceedings, Felipe Perez Perez moved for attorney's fees under the Equal Access to Justice Act. The district court declined to award fees, holding that the government's position was substantially justified. Finding no abuse of discretion in that decision, we affirm.

I.

Perez fled Guatemala at the age of sixteen. He entered the United States in January 2014, and he was apprehended by border patrol agents before eventually being released to his older brother (a resident of North Carolina). On June 29, 2015, a juvenile court in North Carolina conducted an *ex parte* hearing and granted Perez's brother emergency temporary custody of Perez. It also scheduled a hearing for July 22, 2015, to make a permanent custody determination. Yet that hearing did not take place because Perez's eighteenth birthday on July 6 divested the juvenile court of jurisdiction. The court accordingly never entered a permanent custody order.

On or shortly before his eighteenth birthday, Perez filed an application for special immigrant juvenile (SIJ) status with United States Citizenship and Immigration Services (USCIS). SIJ status provides certain protections against removal, *see* 8 U.S.C. § 1255, and it can lead to lawful permanent residency and citizenship, *Perez v. Cissna*, 914 F.3d 846, 850 (4th Cir. 2019). To qualify for SIJ status, a minor must be an immigrant whom "a juvenile court located in the United States" has "placed under the custody of" an individual appointed by that court "and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law."

2

8 U.S.C. § 1101(a)(27)(J)(i). To satisfy this statutory requirement, Perez submitted the June 2015 emergency temporary custody order with his application.

On July 31, 2015, USCIS issued Perez a Notice of Intent to Deny his SIJ application because the June 2015 order was "expressly temporary in nature and does not make a finding that reunification with one or both parents is permanently not viable." *Perez v. Cuccinelli*, 949 F.3d 865, 870 (4th Cir. 2020) (en banc) (quoting USCIS Notice). The Notice offered Perez a chance to submit rebuttal evidence, and Perez subsequently submitted a *nunc pro tunc* order from the juvenile court stating that the June 2015 order "granting temporary custody . . . was as permanent as possible under North Carolina law." J.A. 31–32. USCIS nonetheless denied Perez's application, finding that the *nunc pro tunc* order "does not overcome" the fact that the June 2015 order "is expressly temporary in nature and does not make a finding that reunification with one or both parents is permanently not viable." *Perez*, 949 F.3d at 871 (quoting USCIS decision).

Perez appealed to the Administrative Appeals Office (AAO), which upheld the denial of Perez's SIJ application and dismissed his appeal on May 9, 2016. According to the AAO, the June 2015 order "was not a qualifying juvenile court order" under the statute "at the time it was issued because there was no finality to the proceedings. Only in the hearing scheduled for July 22, 2015, could the juvenile court have determined the viability of [Perez's] reunification with one or both parents and the resulting custody issues." J.A. 15. The agency therefore found Perez ineligible for SIJ classification.

In October 2016, Perez filed a complaint in district court seeking review of the agency's denial of his SIJ application. Perez alleged violations of the Administrative

3

Procedure Act (APA)—arguing that the agency's denial was arbitrary and capricious and in excess of statutory authority because it added an *ultra vires* permanency requirement to the SIJ statute—and of the Full Faith and Credit Clause of the Constitution. USCIS moved for summary judgment on the administrative record, and the district court granted that motion. The district court found the Full Faith and Credit Act inapplicable. And as to Perez's APA claims, the district court held both that the agency did not add an *ultra vires* permanency requirement and that it did not "act arbitrarily or capriciously in differentiating between temporary emergency custody orders and permanent custody orders." J.A. 98.

Perez appealed, and this panel affirmed the district court's judgment in a split decision. The panel majority, per Judge Quattlebaum joined by Judge Wilkinson, found that USCIS "did not impose an *ultra vires* requirement for permanent custody orders," that USCIS did not act arbitrarily or capriciously "in determining that Perez failed to present a qualifying predicate order in support of his SIJ petition," and that the Full Faith and Credit Act was "inapplicable." *Perez*, 914 F.3d at 857. Judge King dissented, reasoning that USCIS did not act in accordance with law because it imposed a permanency requirement contrary to the plain meaning of the SIJ statute. *Id.* at 858, 864.

On rehearing en banc, the court reversed the judgment of the district court and remanded with instructions to grant Perez's motion to set aside USCIS's denial of SIJ status. *See Perez*, 949 F.3d at 868. Judge King's majority opinion held that USCIS acted contrary to law by imposing a permanency requirement and found that USCIS's interpretation "is entitled to no deference, defies the plain statutory language, and impermissibly intrudes into issues of state domestic relations law." *Id.* Judge Quattlebaum

4

dissented, reasoning instead that "the temporary nature of the state order was just one of several factors upon which the Agency relied" and that a deferential standard of review was therefore proper. *Id.* at 882.

Following his victory before the en banc court, Perez sought to recover attorney's fees and expenses under the Equal Access to Justice Act (EAJA). The district court denied Perez's EAJA application, finding the government's position "substantially justified." J.A. 435. It reasoned that the issue was one of first impression, that the government "relied upon its reasonable understanding of relevant precedent . . . given the information it had available at the time," and that the "arguments made by both sides were legally and factually substantial." J.A. 434. That determination is now before us.

## II.

Under the EAJA, "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action" brought against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The EAJA is thus a qualified fee-shifting statute rather than a prevailing party statute. By including the substantial-justification and special-circumstances exceptions instead of automatically awarding fees to victorious parties, Congress intended to "penalize unreasonable behavior on the part of the government without impairing the vigor and flexibility of its litigating position." *Crawford v. Sullivan*, 935 F.2d 655, 659 (4th Cir. 1991).

Perez is indisputably a prevailing party in a civil action brought against the United States. In deciding whether he is entitled to fees and expenses, therefore, we must determine whether the position of the United States was substantially justified.

"The position of the United States" is singular, so we examine "the totality of circumstances" rather than engaging in "an issue-by-issue analysis of the government's posture throughout each phase of the litigation." *Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1993). "While the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." *Comm'r, INS v. Jean*, 496 U.S. 154, 161–62 (1990). "The government's position 'encompass[es] both the agency's prelitigation conduct and the Department of Justice's subsequent litigation position[.]'" *Crawford*, 935 F.2d at 656-57 (alterations in original) (quoting *Jean*, 496 U.S. at 159).

The government need not prevail for its position to be substantially justified, though it does bear the burden of proving substantial justification. *Meyer v. Colvin*, 754 F.3d 251, 255 (4th Cir. 2014). A position is substantially justified "if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988); *see also id.* at 565 (defining "substantially justified" as "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person"). The substantial-justification standard therefore gives the government room to maneuver so long as it does not go completely off the track. *See Hess Mech. Corp v. NLRB*, 112 F.3d 146, 149 (4th Cir. 1997).

We review denials of EAJA fees for an abuse of discretion. *Priestley v. Astrue*, 651 F.3d 410, 415 (4th Cir. 2011). That review is deferential for good reason: The Supreme Court has instructed that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). So only if the district court applied "mistaken legal principles" or made "clearly erroneous factual findings" will we find an abuse of discretion. *Priestley*, 651 F.3d at 415.

We see no such abuse here. The district court rightly noted that Perez's case posed a novel question; that it was no layup, as illustrated by the division among the good judges who considered it; and that there were reasonable arguments on both sides. We thus affirm the district court's denial of attorney's fees.

## A.

At the outset, it matters that Perez's case presented a novel question. As we have recognized, "litigating cases of first impression is generally justifiable." *Cody v. Caterisano*, 631 F.3d 136, 142 (4th Cir. 2011). And "first impression" can well mean first impression in this circuit. *See Hyatt v. Shalala*, 6 F.3d 250, 256 (4th Cir. 1993) ("The Secretary was justified in litigating the issue on appeal because it was still one of first impression in this circuit."). While Perez argues that our prior decision in *Ojo v. Lynch*, 813 F.3d 533 (4th Cir. 2016), set out the appropriate analytical framework for his case, he does not dispute that the specific issue here was one of first impression.

In addition, it is surely relevant that the government's position was found to be persuasive by the district court, by a majority of this panel, and by six judges sitting en banc. *See Pierce*, 487 U.S. at 568 (noting relevance of "the stage in the proceedings at

7

which the merits were decided"). This is strong evidence that the government's position was substantially justified. But just as the government's ultimate defeat before the en banc court does not render its position substantially unjustified, neither do the government's intermediate victories before the district court and this panel automatically mean its position was substantially justified. *See United States v. Paisley*, 957 F.2d 1161, 1167 (4th Cir. 1992). "Conceivably, the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose." *Pierce*, 487 U.S. at 569. Yet it is certainly more likely in these circumstances—where no fewer than seven federal judges agreed with the government—that the position of the United States was substantially justified.

B.

Because the objective indicia may not always be determinative, however, we turn to an assessment of the merits of the government's position. *See Pierce*, 487 U.S. at 569. The rationales of the opinions themselves "are the most powerful available indicators of the strength, hence reasonableness, of the ultimately rejected position." *Paisley*, 957 F.2d at 1167. We must, then, examine this court's en banc opinions. In so doing, we are not attempting to relitigate the merits of Perez's underlying case. Let there be no doubt: the law of our circuit is that USCIS's actions in interpreting the SIJ statute to require a permanent custody order were not "in accordance with law." *Perez*, 949 F.3d at 881.

Start with Judge King's thoughtful en banc majority opinion. That opinion held that USCIS improperly required "a finding of the permanent non-viability of an SIJ applicant's reunification with one or both of his parents and a permanent custody order." *Id.* at 870.

8

And it found the AAO's decision likewise subscribed to the view that permanency was required. *Id.* at 871.

The en banc majority then engaged in careful statutory interpretation, concluding that the SIJ statute was "clear and unambiguous that neither a finding of the permanent non-viability of reunification nor a permanent custody order is required." *Id.* at 873. It first noted that the SIJ statute requires a finding that "reunification with 1 or both . . . parents *is* not viable," which means "reunification must be presently non-viable." *Id.* at 874 (quoting 8 U.S.C. § 1101(a)(27)(J)(i) (emphasis in opinion)). Next, it interpreted the phrase "placed under the custody of" in the SIJ statute to find that the ordinary meaning of "custody"—a word which "contains no temporal requirements"—controlled. *Id.* at 875. Because the statutory language was clear and unambiguous, the majority held that the agency interpretation was not entitled to deference. *Id.* at 872–73.

In addition, the majority found that USCIS's interpretation "impermissibly intrude[d] into issues of state domestic relations law" by "demand[ing] rulings . . . that state courts may be unwilling or unable to render." *Id.* at 876. And it emphasized that even if the statutory language were ambiguous, USCIS's permanency requirement was not entitled to deference either under *Chevron* (because the requirement was not derived through notice-and-comment rulemaking or a formal adjudication) or under *Skidmore* (because the agency did not demonstrate the "carefulness, expertise, or consistency that would imbue its interpretation with the power to persuade"). *Id.* at 877–79. In the end, the majority concluded that "USCIS denied [Perez] SIJ status solely because he lacked the type of custody order—a permanent one—that the Agency has interpreted . . . the SIJ provision to

9

require." *Id.* at 881. Because that interpretation was "not in accordance with law," USCIS had to "take another look at" Perez's SIJ application. *Id.*

Next consider the en banc dissent. The dissent disputed that USCIS "imposed a blanket requirement that SIJ predicate custody orders must be permanent," instead reasoning that "the temporary nature of the state order was just one of several factors upon which [USCIS] relied in concluding that the order did not satisfy the SIJ requirements under the INA." *Id.* at 882 (Quattlebaum, J., dissenting). The dissent thus read the USCIS and AAO decisions to "focus more on the terms of the order that reflect its *ex parte* and emergency nature than whether it was permanent or temporary." *Id.* at 886.

The dissent emphasized that the *ultra vires* standard of review was narrow, asking whether the agency "is not doing the business which the sovereign has empowered [it] to do or [it] is doing it in a way which the sovereign has forbidden." *Id.* at 885 (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949)). Because it read the agency decisions as determining whether the order met the statutory requirements rather than as imposing a blanket rule, it thought that USCIS was merely fulfilling its obligation to review state-court orders for their sufficiency under the SIJ statute, and it found no *ultra vires* problem with USCIS's actions. *See id.* at 886–87.

Perez's alternative "arbitrary and capricious" argument fared no better in the dissent's eyes. Again emphasizing the narrow standard of review, the dissent found a "clear, rational path for [USCIS's] decision." *Id.* at 887. The dissent thought that USCIS had the responsibility to make the determination that it did, that it appropriately explained that the emergency and *ex parte* character of the North Carolina order failed to satisfy the

SIJ requirements, and that its determination, rather than impinging upon state domestic-relations law, was consistent with that law. *Id.* at 887–89. And it found no basis for departing from a deferential standard of review where the agency attempted to give the emergency order the same limited effect that the North Carolina courts would give it. *Id.* at 889. Thus, it would have affirmed the agency's decision. *Id.*

C.

As the en banc opinions demonstrate, this was a tough case. Though the government's position ultimately lost, it almost beggars belief to say its position was not substantially justified. In arguing otherwise, Perez attempts to flyspeck particular arguments by the government, highlighting what he calls obfuscation, indefensible logic, and wholesale changes of position. But "[a]t every stage, in every brief," *Meyer*, 754 F.3d at 257, the government consistently argued that Perez's order did not meet the eligibility requirements of the SIJ statute; that USCIS did not impose an *ultra vires* permanency requirement; and that the agency actions were not arbitrary and capricious. *See* J.A. 29–45 (district court brief); J.A. 132–78 (panel brief); J.A. 273–320 (en banc brief). These arguments, though ultimately rejected, were not unreasonable. Both sides in good faith made the best case they could.

While some of the government's arguments were less persuasive than others, this is true of virtually every case we consider, and so we reject Perez's invitation to inspect every jot and tittle of the government's briefing. After all, we must review the "totality of circumstances." *Roanoke River Basin Ass'n*, 991 F.2d at 139. Those circumstances here show a difficult case posing a novel question with reasonable arguments on both sides.

11

Though this panel was previously divided on the proper resolution of Perez's case, we are united in holding that the district court did not abuse its discretion in finding the government's position in that case substantially justified. Each side fought valiantly in prior proceedings, and it is now well past time to turn swords into plowshares.

## III.

Both Perez and the government put forth strong arguments. And this is exactly as it should be. We do not want to engender an environment in which the government is deterred from presenting full and robust arguments for fear that it may be liable for an award of attorney's fees. If the government goes off the rails, that's one thing. But what we rightly term our *adversary* system is designed precisely for the full-throttle clash that transpired here. Indeed, the EAJA "was never intended to chill the government's right to litigate or to subject the public fisc to added risk of loss when the government chooses to litigate reasonably substantiated positions, whether or not the position later turns out to be wrong." *Roanoke River Basin Ass'n*, 991 F.2d at 139. This case was uncertain at the start and close at the outcome. Though it is tempting to succumb to hindsight's bias by equating a losing position with an unreasonable one, we must resist that temptation here. The district court held that the government's position was substantially justified, and we find no abuse of discretion in that decision.

*AFFIRMED*